UNITED STATES *v.* POWELL

No. 74–884.   Argued October 6, 1975—Decided December 2, 1975

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. STEWART, J., filed an opinion concurring in part and dissenting in part, *post*, p. 94.

*Frank H. Easterbrook* argued the cause for the United States *pro hac vice*. With him on the brief were *Solici-*

*tor General Bork* and *Acting Assistant Attorney General Keeney.*

*Jerry J. Moberg,* by appointment of the Court, 421 U. S. 974, argued the cause *pro hac vice* and filed briefs for respondent.

MR. JUSTICE REHNQUIST delivered the opinion for the Court.

The Court of Appeals in a brief *per curiam* opinion held that portion of an Act of Congress prohibiting the mailing of firearms "capable of being concealed on the person," 18 U. S. C. § 1715, to be unconstitutionally vague, and we granted certiorari to review this determination. 420 U. S. 971 (1975). Respondent was found guilty of having violated the statute by a jury in the United States District Court for the Eastern District of Washington, and was sentenced by that court to a term of two years' imprisonment. The testimony adduced at trial showed that a Mrs. Theresa Bailey received by mail an unsolicited package from Spokane, Wash., addressed to her at her home in Tacoma, Wash. The package contained two shotguns, shotgun shells, and 20 or 30 hacksaw blades.

While the source of this package was unknown to Mrs. Bailey, its receipt by her not unnaturally turned her thoughts to her husband George, an inmate at nearby McNeil Island Federal Penitentiary. Her husband, however, disclaimed any knowledge of the package or its contents.[1] Mrs. Bailey turned the package over to federal officials, and subsequent investigation disclosed that both of the shotguns had been purchased on the same date. One had been purchased by respondent, and another by an unidentified woman.

---

[1] Respondent's husband, Travis Powell, also was an inmate at McNeil Island.

Ten days after having received the first package, Mrs. Bailey received a telephone call from an unknown woman who advised her that a second package was coming but that "it was a mistake." The caller advised her to give the package to "Sally." When Mrs. Bailey replied that she "did not have the address or any way of giving it to Sally," the caller said she would call back.[2]

Several days later, the second package arrived, and Mrs. Bailey gave it unopened to the investigating agents. The return address was that of respondent, and it was later determined that the package bore respondent's handwriting. This package contained a sawed-off shotgun with a barrel length of 10 inches and an overall length of 22⅛ inches, together with two boxes of shotgun shells.

Respondent was indicted on a single count of mailing a firearm capable of being concealed on the person (the sawed-off shotgun contained in the second package), in violation of 18 U. S. C. § 1715.[3] At trial there was evidence that the weapon could be concealed on an average person. Respondent was convicted by a jury which was instructed that in order to return a guilty verdict it must find that she "knowingly caused to be delivered by mail a firearm capable of being concealed on the person."

She appealed her judgment of conviction to the Court of Appeals, and that court held that the portion of

---

[2] Mrs. Bailey testified at trial that she did not know "Sally."

[3] Title 18 U. S. C. § 1715 provides in pertinent part:

"Pistols, revolvers, and other firearms capable of being concealed on the person are nonmailable . . . .

"Whoever knowingly deposits for mailing or delivery, or knowingly causes to be delivered by mail according to the direction thereon . . . any pistol, revolver, or firearm declared nonmailable by this section, shall be fined not more than $1,000 or imprisoned not more than two years, or both."

§ 1715 proscribing the mailing of "other firearms capable of being concealed on the person" was so vague that it violated the Due Process Clause of the Fifth Amendment to the United States Constitution. 501 F. 2d 1136 (1974). Citing *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939), the court held that, although it was clear that a pistol could be concealed on the person, "the statutory prohibition as it might relate to sawed-off shotguns is not so readily recognizable to persons of common experience and intelligence." 501 F. 2d, at 1137.

While the Court of Appeals considered only the constitutional claim, respondent in this Court makes a statutory argument which may fairly be described as an alternative basis for affirming the judgment of that court. She contends that as a matter of statutory construction, particularly in light of the doctrine of *ejusdem generis,* the language "other firearms capable of being concealed on the person" simply does not extend to sawed-off shotguns. We must decide this threshold question of statutory interpretation first, since if we find the statute inapplicable to respondent, it will be unnecessary to reach the constitutional question, *Dandridge* v. *Williams,* 397 U. S. 471, 475–476 (1970).

The thrust of respondent's argument is that the more general language of the statute ("firearms") should be limited by the more specific language ("pistols and revolvers") so that the phrase "other firearms capable of being concealed on the person" would be limited to "concealable weapons such as pistols and revolvers."

We reject this contention. The statute by its terms bans the mailing of "firearms capable of being concealed on the person," and we would be justified in narrowing the statute only if such a narrow reading was supported by evidence of congressional intent over and above the language of the statute.

In *Gooch* v. *United States,* 297 U. S. 124, 128 (1936), the Court said:

> "The rule of *ejusdem generis,* while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation. And, while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view."

The legislative history of this particular provision is sparse, but the House report indicates that the purpose of the bill upon which § 1715 is based was to avoid having the Post Office serve as an instrumentality for the violation of local laws which prohibited the purchase and possession of weapons. H. R. Rep. No. 610, 69th Cong., 1st Sess. (1926). It would seem that sawed-off shotguns would be even more likely to be prohibited by local laws than would pistols and revolvers. A statement by the author of the bill, Representative Miller of Washington, on the floor of the House indicates that the purpose of the bill was to make it more difficult for criminals to obtain concealable weapons. 66 Cong. Rec. 726 (1924). To narrow the meaning of the language Congress used so as to limit it to only those weapons which could be concealed as readily as pistols or revolvers would not comport with that purpose. Cf. *United States* v. *Alpers,* 338 U. S. 680, 682 (1950).

We therefore hold that a properly instructed jury could have found the 22-inch sawed-off shotgun mailed by respondent to have been a "firearm capable of being concealed on the person" within the meaning of 18 U. S. C. § 1715. Having done so, we turn to the Court of

Appeals' holding that this portion of the statute was unconstitutionally vague.

We said last Term that "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States* v. *Mazurie,* 419 U. S. 544, 550 (1975). The Court of Appeals dealt with the statute generally, rather than as applied to respondent in this case. It must necessarily have concluded, therefore, that the prohibition against mailing "firearms capable of being concealed on the person" proscribed no comprehensible course of conduct at all. It is well settled, of course, that such a statute may not constitutionally be applied to any set of facts. *Lanzetta* v. *New Jersey,* 306 U. S., at 453; *Connally* v. *General Constr. Co.,* 269 U. S. 385, 391 (1926).

An example of such a vague statute is found in *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 89 (1921). The statute there prohibited any person from "willfully . . . mak[ing] any unjust or unreasonable rate or charge in . . . dealing in or with any necessaries. . . ." So worded it "forbids no specific or definite act" and "leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." *Ibid.*

On the other hand, a statute which provides that certain oversized or heavy loads must be transported by the "shortest practicable route" is not unconstitutionally vague. *Sproles* v. *Binford,* 286 U. S. 374, 393 (1932). The carrier has been given clear notice that a reasonably ascertainable standard of conduct is mandated; it is for him to insure that his actions do not fall outside the legal limits. The sugar dealer in *Cohen,* to the contrary, could have had no idea in advance what an "unreasonable rate" would be because that would have been deter-

mined by the vagaries of supply and demand, factors over which he had no control. Engaged in a lawful business which Congress had in no way sought to proscribe, he could not have charged *any* price with the confidence that it would not be later found unreasonable.

But the challenged language of 18 U. S. C. § 1715 is quite different from that of the statute involved in *Cohen.* It intelligibly forbids a definite course of conduct: the mailing of concealable firearms. While doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave respondent adequate warning that her mailing of a 22-inch-long sawed-off shotgun was a criminal offense. Even as to more doubtful cases than that of respondent, we have said that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." *Nash* v. *United States,* 229 U. S. 373, 377 (1913).

The Court of Appeals questioned whether the "person" referred to in the statute to measure capability of concealment was to be "the person mailing the firearm, the person receiving the firearm, or, perhaps, an average person, male or female, wearing whatever garb might be reasonably appropriate, wherever the place and whatever the season." 501 F. 2d, at 1137. But we think it fair to attribute to Congress the commonsense meaning that such a person would be an average person garbed in a manner to aid, rather than hinder, concealment of the weapons. Such straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the "void for vagueness" doctrine, and we will not indulge in it.

The Court of Appeals also observed that "[t]o require Congress to delimit the size of the firearms (other than pistols and revolvers) that it intends to declare unmail-

able is certainly to impose no insurmountable burden upon it . . . ." *Ibid.* Had Congress chosen to delimit the size of the firearms intended to be declared unmailable, it would have written a different statute and in some respects a narrower one than it actually wrote. To the extent that it was intended to proscribe the mailing of *all* weapons capable of being concealed on the person, a statute so limited would have been less inclusive than the one Congress actually wrote.

But the more important disagreement we have with this observation of the Court of Appeals is that it seriously misconceives the "void for vagueness" doctrine. The fact that Congress might, without difficulty, have chosen "[c]learer and more precise language" equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague. *United States* v. *Petrillo,* 332 U. S. 1, 7 (1947).

The judgment of the Court of Appeals is

*Reversed.*

Mr. Justice Stewart, concurring in part and dissenting in part.

I agree with the Court that the statutory provision before us is not unconstitutionally vague, because I think the provision has an objectively measurable meaning under established principles of statutory construction. Specifically, I think the rule of *ejusdem generis* is applicable here, and that 18 U. S. C. § 1715 must thus be read specifically to make criminal the mailing of a pistol or revolver, or of any firearm *as* "capable of being concealed on the person" as a pistol or revolver.

The rule of *ejusdem generis* is applicable in a setting such as this unless its application would defeat the intention of Congress or render the general statutory language meaningless. See *United States* v. *Alpers,* 338

U. S. 680, 682; *United States* v. *Salen,* 235 U. S. 237, 249–251; *United States* v. *Stever,* 222 U. S. 167, 174–175. Application of the rule in the present situation entails neither of those results. Instead of draining meaning from the general language of the statute, an *ejusdem generis* construction gives to that language an ascertainable and intelligible content. And, instead of defeating the intention of Congress, an *ejusdem generis* construction coincides with the legislative intent.

The legislative history of the bill on which § 1715 was based contains persuasive indications that it was not intended to apply to firearms larger than the largest pistols or revolvers. Representative Miller, the bill's author, made it clear that the legislative concern was not with the "shotgun, the rifle, or any firearm used in hunting or by the sportsman." 66 Cong. Rec. 727. As a supporter of the legislation stated: "The purpose . . . is to prevent the shipment of pistols and revolvers through the mails." 67 Cong. Rec. 12041. The only reference to sawed-off shotguns came in a question posed by Representative McKeown: "Is there anything in this bill that will prevent the citizens of Oklahoma from buying sawed-off shotguns to defend themselves against these bank-robbing bandits?" Representative Blanton, an opponent of the bill, responded: "That may come next. Sometimes a revolver is more necessary than a sawed-off shotgun." 66 Cong. Rec. 729. In the absence of more concrete indicia of legislative intent, the pregnant silence that followed Representative Blanton's response can surely be taken as an indication that Congress intended the law to reach only weapons of the same general size as pistols and revolvers.

I would vacate the judgment of the Court of Appeals and remand the case to that court for further proceedings consistent with these views.