In the Matter of Establishment Inspection of MEDTRONIC, INC., 3055 Old Highway Eight, P. O. Box 1453, Minneapolis, MN 55440.

Civ. No. 3–80–504.

United States District Court,
D. Minnesota,
Third Division.

Oct. 15, 1980.

Jerome B. Pederson, Fredrikson, Byron, Colborn, Bisbee & Hansen, Minneapolis, Minn., George M. Burditt, Richard O. Wood, Burditt & Calkins, Chicago, Ill., Bruce A. Johnson, Medtronic, Inc., Minneapolis, Minn., for Medtronic, Inc.

Thomas K. Berg, U. S. Atty., Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., Robert R. Donlan, U. S. Justice Dept., Washington, D. C., Kenneth C. Baumgartner, Food and Drug Administration, Rockville, Md., for United States of America.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This is an appeal from an order by the United States Magistrate denying Medtronic, Inc.'s ("Medtronic") motion to quash a warrant for inspection issued pursuant to the Federal Food, Drug and Cosmetic Act ("Act"), 21 U.S.C. § 301 et seq. Medtronic is a leading manufacturer of implanted cardiac pacemakers, and as such is subject to the Medical Device Amendments of 1976, Act of May 28, 1976, Pub.L. No. 94–295, 90 Stat. 539. On May 7, 1980 Federal Food and Drug Administration ("FDA") investigators sought and obtained this warrant for the purpose of inspecting, copying, and verifying certain records maintained by Medtronic relating to two models of cardiac pacemakers, the Xytron II models 5950 and 5951, manufactured from August 1975 to April 1978. These pacemakers are battery operated devices that electrically stimulate the heart in order to maintain a normal heartbeat rhythm. Inspection of documents relating to the Xytron II pacemakers was sought as a result of a reported significant number of sudden failures of the device.

Specifically the inspection warrant required Medtronic to produce the following records relating to the Xytron II models:

1. Complete failure investigation reports;

2. Computerized printout of failures, including all code or legend information needed to interpret the data;

3. Complete complaint files;

4. Complete file handling procedures, failure analysis procedure, and return product handling procedures;

Medtronic objects to those portions of the magistrate's order denying Medtronic's motion to quash the warrant that held that the warrant does not exceed statutory authority and does not violate the Fourth Amendment, and that Medtronic be required to produce "lab notes, reports, X–rays and other documents" pertaining to failure inspection reports, complete complaint files, computerized printout of failures, and documents setting forth procedures for complaint file handling, failure analysis, and returned product handling.

### I. Statutory Authority.

The Medical Device Amendments of 1976, amending the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., were enacted in order to "provide significant new authority to the Secretary of Health, Education and Welfare to assure the safety and

effectiveness of medical devices intended for human use." H.R.Rep. No. 94–853, 94th Cong. 2d Sess. 3 (1976). In its effort to expand the regulatory power of the FDA over medical devices, Congress enlarged the inspection powers of the agency under Section 704 of the Act, 21 U.S.C. § 374. In this instance, the FDA sought inspection of Medtronic's records under the authority of Section 704(e), which provides,

Every person required under section 360i or 360j(g) of this title to maintain records and every person who is in charge or custody of such records shall, upon request of an officer or employee designated by the Secretary, permit such officer or employee at all reasonable times to have access to, and to copy and verify, such records.

Section 519, 21 U.S.C. § 360i, is the provision which authorizes the agency to impose record keeping requirements on medical device manufacturers. It provides that manufacturers "shall establish and maintain such reports and provide such information as the Secretary may by regulation reasonably require to assure that such device is not adulterated or misbranded and to otherwise assure its safety and effectiveness." This section incorporates a standard of reasonableness for regulations promulgated. Relevant to this discussion are the requirements that the regulations not be unduly burdensome, that regulations prescribing procedures for making requests for records or requiring submission of records require that any such request state the reason and purpose for submission and identify the requested records to the fullest practical extent. 21 U.S.C. § 360i.

On July 21, 1978, pursuant to the authority vested in the agency under Section 519, and section 520(f), 21 U.S.C. § 360j(f), authorizing the Secretary to promulgate regulations establishing standards for good manufacturing practices ("GMP"), the FDA issued GMP regulations containing record keeping requirements. See 21 C.F.R. Part 820 (1980). The inspection warrant directed to Medtronic requires production of records which the FDA argues are required records

under the GMP regulations. Medtronic contends, and the government concurs, that only records required by the regulations must be produced. See 21 U.S.C. § 360i; H.R.Rep. No. 94–853, supra at 46.

Medtronic argues that the documents enumerated in the inspection warrant are not records required to be kept by the applicable regulations. Alternatively, it argues that if these records are required by the regulations, then the regulations are impermissibly vague both under the statute and by constitutional standards.

## II. Records Required by the Regulations.

### A. Complete Failure Investigation Reports

■ 21 C.F.R. § 820.162 (1980) provides, After a device has been released for distribution, any failure of that device or any of its components to meet performance specifications shall be investigated. *A written record of the investigation, including conclusions and followup shall be made.*

(Emphasis supplied.) In response to the FDA's request for complete failure investigation reports, Medtronic submitted a one–page letter it sends to physicians containing its conclusions regarding the performance and reason for failure of a failed pacemaker. The magistrate held, and this court agrees, that the company must submit "lab notes, reports, X–rays and other documents" to comply with the regulation and request for information.

Medtronic argues that "complete failure investigation reports" are not required records under 21 C.F.R. § 820.162 (1980). It contends that because the word "complete" is not used in that provision, the request in the warrant is unconstitutionally vague. Furthermore, Medtronic takes the position that "lab notes, reports, X–rays and other documents" are not part of the written record required by § 820.162.

This court is of the opinion that the regulation requires production by Medtronic of the total written record of a failure investigation, including supporting documents

such as lab notes, X-rays and other documents. Medtronic's apparent position that *only* written conclusions and followup are required contravenes the plain language of the regulation and clearly expressed legislative intent. Congress recognized that reasonable record keeping requirements could include "reporting defects, recalls, adverse reactions, patient injuries, and *clinical experience*" with regard to medical devices. H.R.Rep. 94–853, *supra* at 23 (emphasis supplied). To hold otherwise would effectively render the FDA incapable of making a meaningful determination as to the safety of the devices and the adequacy of Medtronic's response to pacemaker failures.

■ The use of the word "complete" in the warrant does not result in an obligation on the part of Medtronic to produce anything more than is required by the regulation. The FDA has voiced concern that Medtronic has shown the agency something less than the written record required by the regulation. Moreover, the use of the word "complete" does not render this request unconstitutionally vague. The use of the word "complete" does not fail to give Medtronic sufficient warning of the scope of the provision of the warrant.

Nor does the fact that the regulation does not enumerate the types of writings that comprise the "written record" result in unconstitutional vagueness. In assessing whether or not § 820.162 gives fair warning of what is required of Medtronic, it is important to note that due process does not impose drafting requirements of mathematical precision or impossible specificity, *see United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975), and that greater leeway is to be afforded to regulatory agencies in drafting regulations that govern business activities. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). It is necessary to measure the language of the regulation by common understanding and commercial practice. *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1336 (6th Cir. 1978). This determination must be made in light of the conduct to which the regulation applies. *Id.*

Here the final GMP regulations were drafted in such a way to apply to all device manufacturers. For this reason, the FDA set forth specific criteria in the GMP regulations, leaving the precise details of compliance to the manufacturers. *See* 43 Fed. Reg. 31508 (1978). The need for flexibility in the GMP regulations was also recognized by Congress. *See* H.R.Rep. 94–853, *supra* at 25. These regulations were carefully drafted after extensive public participation in which Medtronic was involved. If Medtronic has been, as it claims, in any doubt as to the scope of the required record under 21 C.F.R. § 820.162 (1980), it had a duty to inquire of the FDA regarding compliance with that regulation. *See Diebold, Inc. v. Marshall*, 585 F.2d at 1336.

### B. Complete Complaint Files

Medtronic also objects to the use of the word "complete" in the portion of the warrant requiring production of "complete complaint files." For the same reasons set forth in Part II.A, *infra*, of this opinion, the court is not persuaded that this word may not appear in the warrant. In this instance, 21 C.F.R. § 820.198 (1980) contains a detailed description of the required composition of complaint files. These files must be produced in the form required by that provision.

### C. Complaint File Handling Procedures, Failure Analysis Procedure, and Return Product Handling Procedures.

■ The magistrate concluded that documents outlining complaint file handling procedures, failure analysis procedures, and return product handling procedures would be part of the failure investigation record mandated by 21 C.F.R. § 820.162 (1980) governing failure investigations. The government also argues that the regulations relating to required record keeping with regard to quality assurance procedures also encompass these documents. *See* 21 C.F.R. § 820.20 (1980). Medtronic argues that, because the GMP regulations expressly prescribe that certain procedures be set

forth in writing, and that this list does not include procedures enumerated in the warrant, that they cannot be considered required records. We hold that this portion of the inspection warrant must be stricken because it exceeds the statutory authority of the FDA to inspect only required records.

The written record required by 21 C.F.R. § 820.198 (1980) must include documentation of the decision making relative to investigating complaints, and, when investigations are made, the record must reflect, among other things, the nature of the complaint and the reply to the complainant. 21 C.F.R. § 820.198 (1980). Implementation of complaint file handling procedures appear to be an implicit part of compliance with this regulation. Justification of the failure to investigate a complaint would also require implementation of a procedure by which a device manufacturer makes such a determination.

Notwithstanding the above, this court must agree with Medtronic that written complaint file handling procedures themselves are not a required record under 21 C.F.R. § 820.198 (1980). This conclusion is compelled by an examination of the GMP regulations. There are at least twenty references in 21 C.F.R. Part 820 in which explicit record keeping requirements for various procedures are set forth.[1]

The familiar rule of construction "Expressio unius est exclusio alterius" applies here. *See Federal Trade Commission v. Sun Oil Co.*, 371 U.S. 505, 514–15, 83 S.Ct. 358, 360–364, 9 L.Ed.2d 466 (1963). Had the FDA wished to require that device manufacturers keep written procedures for complaint file handling, it could have reasonably imposed such a requirement. But it did not; therefore, Medtronic cannot be compelled to produce this record.

The same must be concluded with regard to failure analysis procedures. Nowhere in the regulations is there a requirement that a device manufacturer document such procedures. This should not be taken to mean, however, that a manufacturer need not keep a written record of a failure investigation which includes supporting documentation.

Though returned product handling is not specifically mentioned in the GMP regulations, returned products are covered by the regulations governing complaint and failure investigations. *See* 21 C.F.R. §§ 820.162, 820.198 (1980). Again, because of the absence of any requirement that procedures be recorded, the FDA may not compel Medtronic to produce these procedures.

The regulations governing quality assurance procedures are not sufficiently broad to encompass the procedures sought here. "Quality assurance" is defined in the regulations as "all activities necessary to assure and verify confidence in the quality of the *process used to manufacture* a finished device." 21 C.F.R. § 820.3(n) (1980) (emphasis supplied). A review of the requirements for a manufacturer's quality assurance program also indicates that quality assurance encompasses only the manufacturing process itself. *See* 21 C.F.R. § 820.20 (1980). Moreover, separate regulations specifically govern complaint and failure problems that arise after a device leaves the manufacturer, and it would be illogical to conclude that procedures for dealing with those problems would be covered by the quality assurance regulations. *See* 21 C.F.R. § 820.162, 820.198 (1980).

### D. Computerized Printout of Failures

The computerized printout containing failure information was prepared by Medtronic at the request of FDA investigators. It provides, in effect, an index to the information found in the failure investigation

---

1. *See* 21 C.F.R. § 820.20 (quality assurance procedures); § 820.56 (environmental control procedures); § 820.60 (equipment procedures); § 820.61 (measurement equipment procedures); § 820.80 (component procedures); § 820.81 (critical component procedures); § 820.100 (specifications control measures, processing controls procedures, and procedure for approval of change in manufacturing process); § 820.116 (reprocessing procedure and critical device or component reprocessing procedures); § 820.150 (warehouse control and distribution); § 820.152 (device installation); § 820.162 (device inspection); and § 820.182 (labelling).

records kept by Medtronic. It is apparent that Medtronic could not have been penalized as a result of a refusal to prepare the printout; it therefore follows that this document is not a required record under the Act. Thus, Medtronic cannot be compelled to produce it.

III. Validity of the Search Warrant under the Fourth Amendment

■ Medtronic must produce pursuant to the inspection complete failure investigation reports and complete complaint files as set forth in this opinion. We hold that the inspection warrant as modified does not offend the Fourth Amendment in that it is authorized by statute, is suitably restricted and reasonable, and was issued pursuant to an administrative plan containing specific neutral criteria. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

Accordingly, it is ordered that the portions of the inspection warrant requiring production of complete file handling procedures failure analysis procedures, and returned product handling procedures, and the computerized printout of failures, including all code or legend information are stricken. The magistrate's order is in all other respects AFFIRMED.