Harvey Barry JACOBS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 14198, 80–26.

District of Columbia Court of Appeals.

Argued Dec. 16, 1980.

Decided Oct. 29, 1981.

Victor B. Gersh, Oakton, Va., for appellant.

William J. Bowman, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Peter E. George, Paul L. Knight, and Thomas C. Hill, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER, and HARRIS,* Associate Judges.

NEBEKER, Associate Judge:

Appellant was convicted in a jury trial of aiding and abetting another in the practice of the healing art without a license, in violation of D.C.Code 1973, §§ 2–102, 22–105. Section 2–102 provides in relevant part:

> No person shall practice the healing art in the District of Columbia who is not . . . licensed so to do. . . .

Appellant was convicted of aiding and abetting a licensed paramedical assistant employed by him. An implied exception to the proscriptions of § 2–102 is contained in D.C.Code 1978 Supp., § 2–123(d)(10), which provides:

> [P]rofessional misconduct . . . means . . . [k]nowingly practicing medicine with an unlicensed physician except in an accredited preceptorship or residency training program; or aiding or abetting such unlicensed persons in the practice of medicine. *This provision shall not apply to accepted use of qualified paramedical personnel.* (Emphasis added.)

■ Appellant raises several grounds for reversal, the majority of which we discuss in the footnote below.[1] His most sub-

---

\* Associate Judge HARRIS did not participate in the disposition of this appeal.

1. Appellant's several other claims are without merit:

(1) The trial court quashed several subpoenas duces tecum sought by appellant against the D. C. Medical Society and its officers and employees. The subpoenas were quashed as unreasonable and oppressive. The decision of the trial judge will not be disturbed absent a clear showing of arbitrariness, which is not present here. *United States v. Nixon,* 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974).

(2) The trial court correctly ruled that the "accepted use" exception of D.C.Code 1978 Supp., § 2–123(d)(10), is an affirmative defense and that the government bears the ultimate burden of proof beyond a reasonable doubt. When the defendant claims a statutory exception as a defense, and particularly where the exception is contained in a separate statute from that defining the offense, the government need not prove that the defendant does not fall within the exception. *White v. United States,* D.C.App., 283 A.2d 21, 23 (1971); *Vincent v. United States,* D.C.Mun.App., 58 A.2d 829, 832 (1948); Wharton's Criminal Procedures: *Indictment and Information* § 293, Vol. 2 (12th ed. 1975). The burden of going forward with

stantial claim is that the statutory exception dealing with paramedical personnel is unconstitutionally vague in that it fails adequately to specify the level or standard of supervision that physicians must exercise over their paramedical assistants in order to qualify as an "accepted use."

We affirm the conviction. However, we set aside the order of probation because imposition of sentence was suspended, and we remand the case for imposition of a legal sentence. See *Schwasta v. United States*, D.C.App., 392 A.2d 1071, 1077 (1978).

## I

At trial, the government produced evidence revealing that appellant was a physician licensed to practice medicine by the District of Columbia. Appellant employed Fernando Morales as a paramedic, or physician's assistant, at appellant's National Health Care Plan Clinic in the District of Columbia. Morales was not licensed to practice medicine. On November 8, 1977, an investigator from the District of Columbia Department of Economic Development inspected the clinic and met with Morales. Appellant was not present during the inspection. Morales showed the investigator a pad of prescription blanks which had been signed by appellant. Seven days later, a covert investigator from the Metropolitan Police Department visited the clinic. He complained of pain in his right shoulder and was examined and treated by Morales. Morales gave the investigator a number of pain pills which, upon analysis, were discovered to be a controlled substance. Morales also filled out and gave the investigator a prescription for a different controlled substance. The prescription form had been pre-signed by appellant, but it was Morales who wrote in the drug name and gave the slip to the patient.

Morales testified under a grant of immunity from the government. He testified that appellant came to the clinic once a week or once every two weeks, and that approximately 200 people came to the clinic for treatment between July and November 1977. Appellant performed the initial examinations of ten to twenty of the patients. Fifty to sixty of the patients were never seen by appellant. Appellant authorized Morales to give prescriptions when appellant was not present in the clinic, and a pad of 50 pre-signed prescriptions was given to Morales for that purpose. Morales wrote approximately 75 to 80 prescriptions during that time. Twenty-five percent of these were written after consulting with appellant in person or over the phone.

## II

The activities of Morales were manifestly within the zone of conduct prohibited by D.C.Code 1973, § 2–102. Morales is unlicensed as a physician and was engaged in the diagnosis and treatment of "illnesses." He is, however, licensed as a paramedical assistant. The issue becomes, then, whether the appellant's use of Morales at the clinic was an "accepted use" within the meaning of the statute permitting paramedical assistance of physicians.

Appellant asserts that the statutory exception provides inadequate notice of the degree of supervision that is necessary to qualify his conduct as an "accepted use." In a case such as this, the alleged vagueness of the statute must be measured in terms of the actual conduct of the appellant in the

the evidence is shifted to the defendant. *Byrd v. District of Columbia*, D.C.Mun.App., 43 A.2d 46 (1945).

(3) Appellant objects, on appeal, to the court's instruction to the jury on aiding and abetting. No objection was made at trial, and we find no reason to reverse on this ground. See *Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976) (en banc).

(4) In its instruction to the jury on the proper consideration of certain evidence, the court did not commit reversible error in using the descriptive language "other criminal acts or other bad acts." In the context of the instructions as a whole, there was little prejudicial impact. See *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *Watts v. United States, supra* at 709.

(5) The court properly accepted the unanimous verdict of the jury despite the pause and slight equivocation with which one juror answered the poll. *Jackson v. United States*, D.C.App., 377 A.2d 1151, 1153 n.4 (1977).

case at hand. *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *In re A. B., Jr.*, D.C.App., 395 A.2d 59 (1978). If this particular appellant could reasonably have comprehended that his conduct was prohibited by the statute, the statute provides sufficient notice and is not unconstitutional. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).

■ Whether a statute is vague cannot be addressed as an abstract proposition. In certain contexts the legislature must necessarily enact regulatory provisions which appear on their face to draw a broad sweep. *See Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974); *see also Ladrey v. District of Columbia Commission on Licensure*, 104 U.S.App.D.C. 239, 242, 261 F.2d 68, 71 (1958). Whether a particular profession or a particular individual in that regulated profession is on notice as to the nature of prohibited conduct depends on whether the statutory prohibition has a comprehensible meaning in the context of regulations, custom, usage, and training in that field. *Parker v. Levy, supra*, 417 U.S. at 754, 94 S.Ct. at 2559. Appellant, a licensed physician, should have been aware of what conduct constitutes "accepted use" of a paramedic, and should have known that in this instance, his conduct departed dramatically from that use.

### III

The broad reach of the literal language of the exception contained in § 2–123(d)(10) has been narrowed sufficiently to provide adequate notice to appellant that his conduct was proscribed.

We begin with certain valid judicial presumptions regarding the training and licensing of doctors. In *Parker v. Levy*, the Supreme Court identified a long line of authority recognizing that the special training, qualifications, and experience of an armed forces officer puts him on notice of what constitutes "conduct unbecoming an officer." Similarly, we recognize that a medical doctor licensed by the District of Columbia is presumptively aware of the acceptable standards of his profession including the "accepted use" of paramedics. This is not unfounded conjecture. Medical testimony is commonly tested against accepted norms in the profession, and is so tested without undue difficulty. Therefore, it is reasonable to conclude that a doctor is held to a high standard of understanding of statutes applicable to his profession and of the "accepted use" of paramedics in that profession.

Since we are dealing with a criminal charge, we ought not to rely only on assumptions regarding the professional awareness of appellant and other physicians. Supporting our holding is the stark reality of the conduct which appellant did permit, aid, and abet. The evidence shows that as a licensed physician, he willfully and knowingly: (1) utilized an employee who was not licensed to practice medicine in the District of Columbia to run a medical clinic, nearly autonomous in its operations; (2) permitted that employee to examine and to treat patients without his consultation and with minimal supervision; (3) permitted that employee, as part of such treatment, to fill out and distribute drug prescriptions which he had pre-signed; (4) did not require that the employee seek his approval before prescribing drugs; and (5) did not review the prescriptions for several days in some cases.

We are further supported in this view by the evidence presented at trial by appellant's own experts. Karl Katterjohn, the director of the Physicians' Assistants Program at George Washington University and a board-certified physician's assistant, testified as to certain accepted uses of paramedics. He testified that it was not an accepted use for a physician to give a paramedical assistant a pre-signed prescription pad. In addition, Mr. Katterjohn testified that accepted use requires that the physician be located in the same building as the physician's assistant. Accepted use, according to his testimony, also requires that the physician approve each prescription before it is

issued, particularly those for controlled substances. Should the physician not actually see the patient, the "24-hour rule" mandates that the physician review the charts within that time.

Noel H. McFarlane, the Assistant Director of the Physicians' Assistant Department at Howard University and a board-certified physician's assistant, also testified as an expert for appellant. McFarlane described the use of pre-signed prescription pads as a common practice, and asserted there is no common standard governing the length of time that properly may pass before review of work by the physician. He testified, however, that where a physician's assistant writes a prescription, accepted practice requires its review within 48 to 72 hours.

From the testimony of appellant's own experts, it appears that he ought to have been aware of the impropriety of his conduct. Even viewing the expert testimony of McFarlane, the more favorable to appellant, as a fair definition of the accepted use of physicians' assistants, appellant's conduct was still a substantial deviation. Testimony revealed that, on occasion, appellant did not review the charts of some patients treated by Morales for as long as two weeks after their visits.

Standards propounded in this jurisdiction by the D.C. Commission on Licensure—of which appellant is presumptively aware as a licensed physician—further narrow the definition of accepted use contained in D.C. Code 1978 Supp., § 2–123(d)(10). In a 1972 policy statement, the Licensure Commission approved the use of physicians' assistants, but set forth these standards: (1) that they not make judgment decisions; and (2) that they only assist and not replace the physician. While in some cases compliance with these standards may be a matter of degree, appellant's conduct falls within the "hard core" of unacceptable conduct. Since we determine the adequacy of notice based on the particular facts at hand, doubtful marginal cases are irrelevant to appellant's allegation of vagueness. *United States v. Powell, supra,* 423 U.S. at 93, 96 S.Ct. at 320; *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 2914, 37 L.Ed.2d 830 (1973); *United States v. Harriss, supra,* 347 U.S. at 618, 74 S.Ct. at 812.

Appellant's action grossly violated this policy statement. He set up the clinic, manned it with physician assistants, and then paid the operation scant personal attention. Appellant was present only weekly or every two weeks, and then only for a few hours. Often he was out of town, and the clinic continued operation. He never saw the majority of patients, nor was he consulted in advance of or contemporaneously with their treatment.

Other specific professional standards of conduct put appellant on notice that his manner of operation did not constitute an accepted use of a paramedic. Regulations of the Food and Drug Administration provide that "All prescriptions for controlled substances shall be dated as of, and signed on, the day when issued." 21 C.F.R. § 1306.05 (1977). Appellant's distribution of pre-signed prescription pads to the physician's assistant with no meaningful restrictions on their use, other than infrequent oral review, constitutes the most serious and obvious violation of "accepted use."[2]

---

2. In a post-verdict motion for judgment of acquittal for insufficient evidence, the trial judge took judicial notice of this regulation. *See Vincent v. United States,* D.C.Mun.App., 58 A.2d 829, 832 (1948). In an unpublished memorandum opinion the trial judge wrote:

> The court would have ruled this federal regulation to be conclusive in determining what constitutes accepted practice in the District of Columbia as to prescription of controlled substances.

Appellant claims that this post-verdict use of the regulation to weigh the sufficiency of evidence violates due process. However, the record reveals ample evidence supporting the verdict. Although the trial judge may have relied upon the regulation to deny the motion, we may sustain his ruling on other grounds. *Ibn-Tamas v. United States,* D.C.App., 407 A.2d 626, 635–36 (1979).

This court also does appellant no injustice by recognizing the regulation. We do so as part of finding that the "accepted use" statute is not unconstitutionally vague. The Supreme Court took exactly the same approach in *Parker v. Levy, supra,* 417 U.S. at 756, 94 S.Ct. at 2561,

Thus, the statute exempting "accepted use of qualified paramedical personnel" from the proscription of § 2-102 survives constitutional attack because the custom and usage of the medical profession, its readily available policies and regulations, and the knowledge presumably held by a licensed practitioner can be read along with the language of the statute to supply adequate notice of what constitutes "accepted use."[3]

Under all of the circumstances—to which we must look in determining whether appellant was on notice of the illegality of his conduct—we hold that appellant was able to have reasonably comprehended that his conduct was not an "accepted use" of a paramedic and, therefore, a violation of the licensing statute.

Furthermore, that appellant aided and abetted conduct falling within the proscriptions of § 2-102 and not within the exception of § 2-123(d)(10), was supported by sufficient evidence to permit the jury reasonably to conclude his guilt beyond a reasonable doubt. *See Crawford v. United States*, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967).[4]

*Conviction affirmed; sentence vacated and case remanded for sentencing.*

---

in relying on the Manual for Courts Martial to specify the nature of "conduct unbecoming an officer," as charged under the Uniform Code of Military Justice. The Manual for Courts Martial and the regulation challenged here are on equal legal footing.

3. Appellant's reliance on *Lewis v. District of Columbia Commission on Licensure*, D.C.App., 385 A.2d 1148 (1978), is misplaced. In that case, the Commission suspended a doctor's license for misconduct. The doctor had failed adequately to supervise employees administering acupuncture treatments. We reversed, holding that there were no clearly articulated standards which would have put the petitioner on notice that the procedures he utilized would have constituted "misconduct."

*Lewis* was an administrative proceeding based on a charge of "misconduct," the language contained in the statute. The statute provided no indication of what constituted misconduct. No independent "viable regulations or rules establish[ed] treatment standards." *Id.* at 1151. Furthermore, acupuncture was a relatively new form of treatment for which there were few established medical guidelines which could be charged to the knowledge of a licensed physician.

The possible inadequacy of the statute involved in this case is amply remedied by independent sources of meaning, of which a physician is duty bound to be aware.

4. We do not decide whether the statute would be unconstitutionally vague as applied to the paramedic.