[J-18-2017] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| ANTHONY BURKE, BY HIS PNG JOHN BURKE, | : | No. 23 EAP 2016 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| Appellee | : | Court entered on 11/13/2015, at No. |
| | : | 2299 EDA 2011, affirming and |
| | : | remanding the Order entered on |
| v. | : | 7/19/2011 in the Court of Common |
| | : | Pleas, Philadelphia County, Civil |
| | : | Division at No. 2226 February Term, |
| INDEPENDENCE BLUE CROSS, | : | 2010. |
| | : | |
| Appellant | : | ARGUED: March 8, 2017 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED: October 5, 2017**

Because the plain language of the Autism Spectrum Disorders Coverage Law, 40 P.S. § 764h, is clear and unambiguous, I dissent. I disagree with the Majority's holding that the Law is "materially ambiguous in relevant aspects." Majority Opinion, slip op. at 16. In this case, this Court must determine whether subsection 764h(c) of the Law allows Independence Blue Cross (IBC) to apply a general exclusion in its health insurance policy to deny coverage for the in-school treatment of Anthony Burke's autism spectrum disorder through applied behavioral analysis (ABA). I begin by noting the principles of statutory interpretation.

> When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." Only "[w]hen the words of the statute are not explicit" may a court resort to the rules of statutory construction, including those provided in 1 Pa.C.S. § 1921(c). A statute is ambiguous when there

are at least two reasonable interpretations of the text under review.

*Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014) (footnote omitted) (citations omitted).

With those principles in mind, this Court must construe Section 764h, which provides:

### § 764h. Autism spectrum disorders coverage

(a) A health insurance policy or government program covered under this section shall provide to covered individuals or recipients under twenty-one (21) years of age coverage for the diagnostic assessment of autism spectrum disorders and for the treatment of autism spectrum disorders.[1]

(b) Coverage provided under this section by an insurer shall be subject to a maximum benefit of thirty-six thousand dollars ($36,000) per year but shall not be subject to any limits on the number of visits to an autism service provider for treatment of autism spectrum disorders. . . .

(c) Coverage under this section shall be subject to copayment, deductible and coinsurance provisions and any other general exclusions or limitations of a health insurance policy or government program to the same extent as other medical services covered by the policy or program are subject to these provisions.

---

[1] Through a series of definitions, this subsection includes coverage for ABA. Specifically, the Law defines the "treatment of autism spectrum disorders" as consisting of, among other treatments, "rehabilitative care," which includes "applied behavioral analysis." *See* 40 P.S. § 764h(f)(14) ("'[t]reatment of autism spectrum disorders' shall be identified in a treatment plan and shall include any of the following medically necessary pharmacy care, psychiatric care, psychological care, rehabilitative care and therapeutic care . . ."); 40 P.S. § 764h(f)(12) ("'[r]ehabilitative care' means professional services and treatment programs, including applied behavioral analysis, provided by an autism service provider to produce socially significant improvements in human behavior or to prevent loss of attained skill or function").

. . .

40 P.S. § 764h(a)-(c).

On its face, subsection 764h(a) of the Law directs insurers to provide health insurance coverage for the diagnosis and treatment of autism spectrum disorders, which includes ABA services. However, in subsection 764h(c), the legislature provides that coverage is subject to: (1) "copayment, deductible and coinsurance provisions;" and (2) "any other general exclusions or limitations of a health insurance policy." This language is not vague or capable of two reasonable interpretations. Subsection 764h(c) plainly permits a health insurance provider to apply a general exclusion of its health insurance policy to limit the coverage mandated by subsection 764h(a). In this case, IBC applied a general exclusion, stating that no benefits would be provided for care in a school, to deny coverage for ABA treatment provided to Burke in school.[2] Therefore, I would conclude the legislature expressly and unambiguously permitted general exclusions in health insurance policies to limit coverage for autism treatment.[3]

---

[2] The full text of the exclusion in IBC's policy, which the parties stipulated applies to "all services under the policy," is:

> Except as specifically provided in this contract, no benefits will be provided for services, supplies or charges:
>
> > a. For care in a nursing home, home for the aged, convalescent home, school, institution for retarded children, custodial care in a skilled nursing facility.

*Burke v. Independence Blue Cross*, 128 A.3d 223, 225 (Pa. Super. 2015).

[3] The Majority characterizes my position as a "categorical approach" permitting all general exclusions, "including ones which would obviate pillars of the coverage otherwise provided for in the Autism Coverage Law[.]" Majority Opinion, slip op. at 18 n.18. My dissent is premised on a policy exclusion of benefits for services provided in schools and specific statutory language permitting insurers to apply "any other general exclusions" to limit autism coverage. The exclusion in this case does not exempt all coverage for an autism treatment mandated by the Law. The parties agree that while IBC applied the exclusion to in-school ABA services, IBC covered Burke's ABA services (continued…)

Despite the plain language of Section 764h, Burke attempts to introduce ambiguity into Section 764h through three arguments. First, Burke contends that reading the Law in context, allowing the general exclusion provision to exclude ABA services provided in schools would "render hollow" the mandate to provide ABA services. Burke's Brief at 6-8. Second, Burke argues that the General Assembly's intent was to require insurers to cover ABA services provided in schools. *Id.* at 8. Burke reasons the Law defines ABA as the "design, implementation and evaluation of environmental modifications," and because Anthony Burke was prescribed ABA in school, permitting IBC to use a place of services exclusion to deny in-school coverage would make the mandate to cover ABA services superfluous. *Id.* at 12. Third, Burke asserts that the environmental component of ABA services renders them unique medical services that are incapable of being excluded "to the same extent as other medical services." *Id.* at 13. While I am sympathetic to Burke's needs for ABA services, Burke's arguments that they must be covered in school are not premised on the plain language of Section 764h; instead, they discount that plain language in an attempt to ascribe an intent to the legislature that is contrary to the express provisions of Section 764h.[4] Because Section 764h is not ambiguous, I discern no reason to ignore

---

(…continued)
outside of the school setting. The exclusion applies to benefits sought for any service provided in a school setting, and does not single-out coverage for autism treatment. The statute's plain language permits this.

[4] Burke does not raise or rely on the principle of *ejusdem generis*. However, I note that *ejusdem generis* cannot, on its own, render a statute ambiguous. Instead, it is merely a canon of construction used after a court determines that statutory language is ambiguous. *See United States v. Turkette*, 452 U.S. 576, 581 (1981) ("The rule of *ejusdem generis* is no more than an aid to construction and comes into play only when there is some uncertainty as to the meaning of a particular clause in a statute"); *accord Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980) ("The rule of *esjusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty") (quoting *United States v. Powell*, 423 U.S. 87, 91 (continued…)

its language "under the pretext of pursuing its spirit."[5]  *See Warrantech*, 96 A.3d at 354 (citation omitted).

Accordingly, I would reverse the decision of the Superior Court.

---

(…continued)
(1975)).  In this case, Section 764h is unambiguous, and there is no need to resort to any canon of construction, including *esjusdem generis*.

Additionally, as explained above, subsection 764h(c) contains two types of limitations that coverage for the diagnosis and treatment of autism spectrum disorders is subject to: (1) "copayment, deductible and coinsurance provisions;" and (2) "any other general exclusions or limitations of a health insurance policy."  As plainly indicated by the statutory structure, "any other general exclusions or limitations" are separate from "copayment, deductible and coinsurance provisions[.]"  Accordingly, the phrase "any other general exclusions" cannot be defined by reference to "copayment, deductible and coinsurance provisions" because the General Assembly separated those two classes from one another.

[5] As former-Justice, now-Senior Judge Fitzgerald stated in his dissent to the Superior Court's decision, "If our Legislature intended for private health insurers to cover ABA services provided in schools, then it could have explicitly excluded such services from the limiting provision at 40 P.S. § 764h(c)."  *Burke*, 128 A.3d at 234 (Fitzgerald, J., dissenting).