In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________

No. 22-1139
MARK BENNER,
 Petitioner-Appellant,

 v.

JESSE CARLTON, Chief Probation Officer of St. Joseph County,
Indiana,
 Respondent-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Indiana, South Bend Division.
 No. 3:20-CV-731-DRL-MGG — Damon R. Leichty, Judge.
 ____________________

 ARGUED SEPTEMBER 20, 2022 — DECIDED JANUARY 26, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and BRENNAN, Circuit
Judges.
 EASTERBROOK, Circuit Judge. A statute in Indiana makes it
a crime for anyone who “has or had” a professional relation
with a person under the age of 18 to “use[] or exert[] the per-
son’s professional relationship to engage in sexual inter-
course” with that young person. Ind. Code §35-42-4-7(n). A
jury convicted Mark Benner of violating this statute, and the
2 No. 22-1139

judge sentenced him to 66 months’ imprisonment, suspended
in favor of probation. The state’s judiciary ﬁrst rejected two
constitutional challenges to this statute, 2017 Ind. App. Un-
pub. LEXIS 981 (July 27, 2017), and then aﬃrmed the convic-
tion, 131 N.E. 3d 634 (Ind. App. 2019). A district court denied
Benner’s petition for collateral relief, which rests on a conten-
tion that the statute is unconstitutionally vague. 2021 U.S.
Dist. LEXIS 247052 (N.D. Ind. Dec. 23, 2021).
 The evidence at trial permiced a jury to ﬁnd that, when
Benner was 43, he used his position as her mentor to seduce
P.A., who was 17. P.A. hoped to use her athletic abilities not
only to play basketball but also to obtain a college scholarship.
Benner became an assistant varsity basketball coach at
Mishawaka High School in 2010 and coached P.A. in that ca-
pacity. He and his wife had tutored P.A. in basketball for
years before he joined the school’s coaching staﬀ. Benner’s
daughter was one of P.A.’s friends and teammates. Benner re-
signed his position in March 2013 and told P.A. personally;
she cried, and they kissed. Benner promised to coach her one-
on-one and help her get a basketball scholarship. He did both
things—and the pair also began a sexual relationship that
lasted through the spring of P.A.’s ﬁrst year in college, when
Benner’s and P.A.’s families learned what was happening.
 The phrase “use[] or exert[] the person’s professional rela-
tionship” has a lengthy statutory deﬁnition, Ind. Code §35-42-
4-7(p), with six non-exclusive factors, including the defend-
ant’s “ability to exert undue inﬂuence over the child.” But the
potentially ambulatory terms on this list are not the focus of
Benner’s constitutional challenge. Instead he asserts: “A per-
son of ordinary intelligence would not understand how he
might ‘use’ or ‘exert’ a professional relationship to engage in
No. 22-1139 3

sexual conduct with a child when that professional relation-
ship no longer exists”. This might puzzle Benner’s lawyer, but
it would not puzzle an ordinary person. Recall that the statute
deﬁnes the crime as abusing a professional relation that a per-
son “has or had” with the victim. It is easy to see how a coach
can use that position to groom a youngster for sex, even if the
coach plans that the sexual activity will follow the basketball
season’s end. A jury readily could ﬁnd that Benner used his
time as P.A.’s oﬃcial coach to set up a situation in which she
would depend on him afterward and be easier to seduce.
 The statute deﬁnes “professional relationship” to include
a situation in which “the person has a relationship with a
child that is based on the person’s employment or licensed
status as described in subdivision (1).” Ind. Code §35-42-4-
7(i)(2). Benner had a formal coaching relation with P.A. before
April 2013; he does not doubt that this comes within §35-42-
4-7(i)(1). After he resigned as the assistant coach, he and P.A.
had the sort of relation described in §35-42-4-7(i)(2), because
Benner told P.A. that he would take her under his wing and
continue coaching her.
 Benner’s vagueness argument strikes us as an ex post facto
argument in disguise. He observes that his position as assis-
tant coach ended before amendments to the statute took eﬀect
on July 1, 2013, and he adds that the deﬁnition of “profes-
sional relationship” in subsection (i) is in the present tense. He
never had a licensed or oﬃcial coaching relation with P.A. af-
ter the statutory amendment. And, until its amendment, sub-
section (n) used the present tense (“has”); not until July 2013
did “has” become “has or had”.
 As an argument based on the Ex Post Facto Clause, this is
a ﬂop. Indiana did not charge Benner with any conduct that
4 No. 22-1139

preceded July 2013. It contended—and the jury found—that
after July 2013 Benner seduced P.A. by using inﬂuence gained
from his former (“has or had”) position as assistant coach
(paragraph (i)(1) plus paragraph (n)(1)) and his ongoing posi-
tion as her personal coach (paragraph (i)(2)).
 Benner’s argument is no becer when denominated as one
about vagueness. Doubtless the present tense in subsection (i)
has some potential to confuse, but present tense is the recom-
mendation of legislative drafters because other tenses can be
worse. See Senate Legislative Drafting Manual §103(a) (1997);
House Legislative Counsel’s Manual on Drafting Style §351(f)
(1995); Drafting Manual for the Indiana General Assembly
Ch. 2(C)(3) (2012). Past tense might imply that the important
time is the date the bill became law or an indictment was re-
turned; future tense would leave time ucerly uncertain unless
the legislation speciﬁed a future benchmark. Drafting in one
tense, and leaving disambiguation to context, see 1 U.S.C. §1,
is the normal choice. Treating this choice as unconstitutional
would leave almost the entirety of state and federal statute
books unenforceable.
 When a federal court conducts collateral review of state
convictions, a petition
 shall not be granted with respect to any claim that was adjudi-
 cated on the merits in State court proceedings unless the adjudi-
 cation of the claim—
 (1) resulted in a decision that was contrary to, or involved an
 unreasonable application of, clearly established Federal law,
 as determined by the Supreme Court of the United States; or
 (2) resulted in a decision that was based on an unreasonable
 determination of the facts in light of the evidence presented
 in the State court proceeding.
No. 22-1139 5

28 U.S.C. §2254(d). Benner has not pointed to any decision of
the Supreme Court that “clearly establish[es]” a constitutional
problem with the present tense or words such as “use” or “ex-
ert”. These are ordinary parts of both legal and lay vocabular-
ies. Nor does Benner contend that §35-42-4-7 is invalid across
the board; he acknowledges that his is an “as applied” chal-
lenge. Such challenges fail if the statute gives notice that illu-
minates the facts at hand, even if cases at the margin present
diﬃcult questions. E.g., Hoﬀman Estates v. Flipside, Hoﬀman Es-
tates, Inc., 455 U.S. 489, 494–95 (1982). And a reasonable jury
(or reasonable state judiciary) could ﬁnd that a 43-year-old
man has exerted undue inﬂuence when using a professional
coaching relation, plus a girl’s desire for a basketball scholar-
ship, to get her into bed. This is something that every coach or
mentor should understand with or without a statute.
 Asked at oral argument what decision of the Supreme
Court “clearly establishes” the invalidity of a statute such as
§35-42-4-7, Benner did not have an answer. He pointed to
some appellate decisions, but §2254(d)(1) forecloses reliance
on them. See, e.g., Lopez v. Smith, 574 U.S. 1 (2014). After argu-
ment he ﬁled a lecer naming Johnson v. United States, 576 U.S.
591 (2015), as his best authority. Yet that decision is not re-
motely controlling. Johnson held the residual clause of 18
U.S.C. §924(e)(2)(B) invalid because it depended on the riski-
ness of a prior oﬀense—but not on the riskiness of the oﬀense
as commiced. Instead, the Court observed, risk had to be eval-
uated using an ideal manifestation of the oﬀense, without any
way to ﬁgure out what the ideal was, plus the absence of any
metric for how much risk was too much. 576 U.S. at 597–98.
The Justices added:
 As a general maSer, we do not doubt the constitutionality of laws
 that call for the application of a qualitative standard such as
6 No. 22-1139

 “substantial risk” to real-world conduct; “the law is full of in-
 stances where a man’s fate depends on his estimating rightly …
 some maSer of degree,” Nash v. United States, 229 U.S. 373, 377
 (1913). The residual clause, however, requires application of the
 “serious potential risk” standard to an idealized ordinary case of
 the crime.

576 U.S. at 603–04. Indiana’s statute does not require courts to
hypothesize idealized cases; it calls for concrete application of
ordinary words such as “use” and “exert”. Compared with
some statutes that the Supreme Court has held valid—e.g.,
United States v. Powell, 423 U.S. 87 (1975) (ﬁrearm “capable of
being concealed on the person”)—§35-42-4-7 is a model of
precision. And Nash, which Johnson cited favorably, held the
Sherman Antitrust Act, 15 U.S.C. §1, to be valid. Again Indi-
ana’s law is more concrete.
 AFFIRMED