579 P.2d 68
**STATE of Arizona, Appellee,**

v.

**Harvey Udell JACOBS, Appellant.**

**No. 1 CA–CR 2329.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 9, 1978.

Bruce E. Babbitt, Former Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Steven D. Sheldon, Carol Benyi, Asst. Attys. Gen., Phoenix, for appellee.

Erlichman, Fagerberg & Margrave by Carla G. Ryan, Phoenix, for appellant.

OPINION

SCHROEDER, Judge.

In February, 1976, the appellant, Harvey Udell Jacobs, attempted to secure a large construction contract from a prominent home builder. In the course of those attempts, appellant represented to the builder that, in return for the contract, he would control the vote of a key city councilman on a zoning matter important to the interests of the home builder. Appellant was convicted of violating A.R.S. § 13–281.01, making it a criminal offense to seek to "obtain money or any other thing of value" upon a claim or representation that the person seeking the benefit "can or will improperly influence the action of a public officer . . .." Appellant was sentenced to 20 weekends in the Maricopa County Jail and placed on probation for a period of three years. In this appeal he challenges the constitutionality of the statute on grounds of vagueness and overbreadth. We affirm the conviction.

The evidence at trial showed that appellant first met with the home builder, John F. Long, on February 2, 1976, to discuss the possibility of appellant obtaining a contract for the installation of floor covering in a new subdivision Long was planning to build. During this conversation, appellant asked Long what it would be worth to him to "get Rosie's vote" on a controversial zoning application sought by one of Long's competitors. Appellant was referring to Phoenix City Councilman Rosendo Gutierrez. Appellant indicated that Gutierrez would vote the way he instructed and stated that Gutierrez owed him a debt which he would cancel in return for the vote on the zoning application. Long told appellant he would have to submit a bid to receive the contract and that he could return to Long's office to pick up the bid specifications.

Long then contacted the Phoenix Police Department and, at its suggestion, recorded his next conversation with appellant. Again, appellant indicated that he could

control Gutierrez' vote on the zoning application. Appellant also offered to arrange a meeting with Gutierrez if there would be "no bugging." In short, the evidence showed that appellant represented that he could force Gutierrez to vote in favor of Long's interests if Long in turn awarded appellant the contract.

Appellant's first contention in this appeal is that the statute under which he was convicted is unconstitutionally vague. A.R.S. § 13–281.01 provides:

"A person who obtains, or seeks to obtain money or any other thing of value from another person, upon a claim or representation that he can or will improperly influence the action of a public officer or a public employee shall be punished by imprisonment in the state prison for not more than ten years or by a fine not exceeding ten thousand dollars, or both."

The vagueness challenge focuses upon the words "improper influence" as contained in the statute. "Improper influence" is defined in A.R.S. § 13–281(4) as

"unlawful or corrupt influence over a public officer or public employee that prevents or interferes with the exercise of such officer's or employee's free will or discretion."

A further definition of "corrupt" is contained in the general definitional section of our statutes, A.R.S. § 1–215(5):

"5. 'Corruptly' imports a wrongful design to acquire or cause some pecuniary or other advantage to the person guilty of the act or omission referred to, or to some other person."

 The essential question in resolving a vagueness challenge is whether the legislative enactment lacks sufficient specificity to be understood by a person of common intelligence. E. g., *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972); *State v. Sanner Contracting Co.,* 109 Ariz. 522, 524, 514 P.2d 443, 445 (1973). Due process forbids a state "from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Rose v. Locke,* 423 U.S. 48, 49,

96 S.Ct. 243, 244, 46 L.Ed.2d 185, 186 (1975), *citing, United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954). In *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), Justice Marshall identified and explained the values served by requiring reasonable specificity:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policeman, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' " *Id.* at 108–09, 92 S.Ct. at 2298–99, 33 L.Ed. at 227–28. (footnotes omitted).

 A legislature, however, is not required to draft a statute with mathematical certainty. *State v. Sanner Contracting Co.,* 109 Ariz. 522, 524, 514 P.2d 443, 445 (1973). The constitutional prohibition against excessive vagueness.

"does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'

*Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). . . . All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke,* 423 U.S. at 49–50, 96 S.Ct. at 244, 46 L.Ed. at 188 (footnote omitted).

*See also, Johnson v. Phoenix City Court,* 24 Ariz.App. 63, 535 P.2d 1067 (1975); *State v. Cole,* 18 Ariz.App. 237, 501 P.2d 413 (1972), which pointed out that the difficulty encountered by a legislative body in expressing certain concepts is a proper consideration in resolving a vagueness challenge.

█ With these principles in mind, we cannot accept appellant's position that a person of ordinary intelligence would fail to understand what is proscribed by the terms of this statute. We believe that the definition of "improper influence" in A.R.S. § 13–281(4), which expressly states that the influence must "interfere with the exercise of . . . free will or discretion," adequately connotes an element of coercion not present in lawful contacts with officials. Despite appellant's assertion that the legislature could easily have drawn a more specific statute, no examples have been called to our attention, and we note that a similar enactment in California is no more precise.[1] Moreover, there is no question in this case that the course of conduct proposed by the appellant in connection with securing Gutierrez' vote was improper. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *State v. Hagen,* 27 Ariz.App. 722, 558 P.2d 750 (1976).

█ Appellant also attacks A.R.S. § 13–281.01 as being overbroad, and asserts that it includes lawful as well as unlawful conduct. In this regard, appellant initially contends that the statute proscribes mere incidental boasting, bragging, or puffing. We disagree. The statute does not proscribe all statements concerning influence of a public official, but only claims or representations of improper influence made with the intent to procure something of value in return. The evidence introduced in this case was more than adequate to enable the jury to find the requisite intent. The statute does not proscribe innocent bravado, nor does it proscribe statements made in connection with legitimate lobbying activity.

█ Appellant further contends that application of the statute to his activities impinged upon his first amendment rights to free speech. It is true that appellant's conviction was based upon his conversations with Long. However, we reject appellant's notion that an attempt to obtain monetary gain by threatening or promising unlawful conduct is protected speech. Although appellant points out that he did not, in fact, have any means to control Gutierrez' vote, we are not persuaded that false representations are entitled to greater protection than true ones. Appellant also stresses that his efforts were unsuccessful in that Long did not accept his offer and that he never made any attempt to contact Gutierrez. We believe appellant's contentions are aimed at a fundamental misapplication of the first amendment. Under appellant's reasoning, extortion threats would constitute protected speech. The first amendment is our cherished guardian of freedom in expressing ideas, opinions and information. It is not a shield for criminal activity which has been thwarted at an early stage. As stated by Justice Black in *Giboney v. Empire Storage and Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949),

> "[b]ut it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed. See e. g., *Fox v. Washington,* 236 U.S. 273, 277, 35 S.Ct. 383,

---

1. Cal. [Gov't] Code § 9054 (West) provides that any person who obtains or "seeks to obtain, money or other thing of value from another person" upon the representation that "he can or will improperly influence in any manner the action of any member of a legislative body" in a legislative matter is guilty of a felony.

384, 59 L.Ed. 573; *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. Such an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society." *Id.* at 502, 69 S.Ct. at 691, 93 L.Ed. at 843–44.

We deal briefly with appellant's third claim of error. At the conclusion of the prosecution's case, appellant moved for a directed verdict on the ground that the State had failed to submit formal proof that Rosendo Gutierrez was a city councilman at the time appellant offered to influence his vote. The trial court, outside the presence of the jury, took judicial notice of his office, and denied the motion.

It is not now disputed that Gutierrez was, in fact a councilman. Appellant's position is that such fact in this case was an essential element of the crime, and the court could not take judicial notice of it. It is well established that judicial notice may be taken of public offices and their official positions. *Walker v. D'Alesandro,* 212 Md. 163, 129 A.2d 148 (1957); *Rhodes v. Crites,* 173 Neb. 501, 113 N.W.2d 611 (1962); *DeCarlo v. Town of Lowville,* 24 A.D.2d 678, 261 N.Y.S.2d 163 (1965); *cf. Kazal v. Kazel,* 98 Ariz. 173, 402 P.2d 1001 (1965); *see generally,* McCormick, Handbook on the Law of Evidence § 330, at 765 (2d ed. E. Cleary 1972); 31 C.J.S. *Evidence* § 37, at 975–76 (1964). The record in this case was replete with references to Rosendo Gutierrez as a councilman, and direct proof of his office was not required. *Cf. Walker v. State,* 23 Ariz. 59, 201 P. 398 (1921); *Lenord v. State,* 15 Ariz. 137, 137 P. 412 (1913). There is no ground for reversal.

Affirmed.

DONOFRIO, P. J., Department C, and OGG, J., concur.