750 P.2d 868

**STATE of Arizona, Appellant,**

v.

**Joseph Frank TOCCO, Appellee.**

**No. 1 CA–CR 7480.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 2, 1986.

Appellant's Motion for Reconsideration Granted and Opinion Modified Jan. 15, 1988.

Robert K. Corbin, Atty. Gen. by Steven J. Twist, Chief Counsel, Organized Crime and Racketeering Div., Patrick M. Murphy, Chief Counsel, Financial Fraud Div. and Cameron H. Holmes, Jessica Gifford Funkhouser, Asst. Attys. Gen. and Thomas E. Collins, Maricopa Co. Atty., Phoenix, for appellant.

Slaton Law Offices by Sandra Lynn Slaton, Phoenix, for appellee.

## OPINION

BROOKS, Presiding Judge.

The state has appealed from the dismissal of count one of an amended information that charged defendant with leading organized crime, a class two felony, in violation of A.R.S. § 13–2308.[1] After a hearing on defendant's motion to dismiss, the trial court ruled that the statute is unconstitutionally vague. We reverse.

Former A.R.S. § 13–2308 provided:[2]

A. A person commits leading organized crime by:

---

1. The amended information also charged defendant with twelve additional felony counts: three counts of conducting an illegal enterprise, under A.R.S. § 13–2312; six counts of conspiracy, under A.R.S. § 13–1003; one count of filing false sales tax returns, under A.R.S. § 42–1332; and two counts of obstructing a criminal investigation or prosecution, under A.R.S. § 13–2409.

2. After briefing in this appeal was complete, § 13–2308(A)(1) was amended by Laws 1985, Ch. 224, § 1 to add the language: "... with the intent to promote or further the criminal objectives of the syndicate." This addition does not affect our analysis of the statutory language under which appellant was charged. The seminal, definitional term, "criminal syndicate," *see* A.R.S. § 13–2301(C)(2), has remained unchanged since the statute was adopted.

1. Intentionally organizing, managing, directing, supervising or financing a criminal syndicate; or

2. Knowingly inciting or inducing others to engage in violence or intimidation to promote or further the criminal objectives of a criminal syndicate; or

3. Furnishing advice, assistance or direction in the conduct, financing or management of a criminal syndicate's affairs with the intent to promote or further the criminal objectives of a criminal syndicate; or

4. Intentionally promoting or furthering the criminal objectives of a criminal syndicate by inducing or committing any act or omission by a public servant in violation of his official duty.

B. No person shall be convicted pursuant to this section on the basis of accountability as an accomplice unless he aids or participates in violating this section in one of the ways specified.

The term "criminal syndicate," which is an element of the crime of "leading organized crime," is defined in A.R.S. § 13–2301(C)(2) as follows:

C. For the purposes of § 13–2308:

\* \* \* \* \* \*

2. "Criminal syndicate" means any combination of persons or enterprises engaging, or having the purpose of engaging, on a continuing basis in conduct which violates any one or more provisions of any felony statute of this state.

The crux of the constitutional challenge to § 13–2308 in this case is defendant's argument that the statute does not adequately define the term "criminal syndicate" even though it is an underlying element of the crime of "leading organized crime." He argues that § 13–2301(C)(2) gives only an ambiguous and wholly inadequate definition of the term "criminal syndicate" because it does not define the meaning of "continuing basis" and fails to set forth the specific number of offenses which must occur for establishing a "criminal syndicate" or the period of time governing such offenses. He argues, therefore, that a person is left to guess at what conduct he must engage in, and with what

type of individuals, in order to be guilty of violating A.R.S. § 13–2308.

■ At the outset, we note that the state asserts that defendant has no standing to argue the "vagueness" of A.R.S. § 13–2308 because he does not contend that any of his own potentially innocent conduct is being prosecuted under the statute. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Rather, the state contends that because defendant gives examples of how the statute can be applied to innocent conduct in general, he is, in effect, presenting an "overbreadth" rather than a "vagueness" challenge to the statute. We agree that ordinarily a defendant cannot challenge a statute as being impermissibly vague or overbroad where the statute has given him fair notice of the criminality of his own conduct, even though the statute may be unconstitutional when applied to another's conduct. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed. 2d 439 (1974); *State v. Duran,* 118 Ariz. 239, 575 P.2d 1265 (App.1978). However, in this case, defendant has raised a fundamental objection to the statute by arguing that it is facially unconstitutional and incapable of *any* valid application because several important elements of the offense are so ill-defined as to provide no notice of the conduct that is proscribed. He argues that the statute has no "clear" meaning at all. We find, therefore, that defendant has standing to challenge A.R.S. § 13–2308 on vagueness grounds.

We begin our analysis of defendant's constitutional challenge to A.R.S. § 13–2308 by noting that a strong presumption exists in support of the constitutionality of any legislative enactment. *State v. Ramos,* 133 Ariz. 4, 648 P.2d 119 (1982). A person challenging the validity of a statute has the burden of overcoming this strong presumption, and the court should give the challenged statute a constitutional construction whenever possible. *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977).

We disagree with the trial court's conclusion that the recent United States Supreme

Court decision in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) is dispositive of this case. *Kolender* involved a California statute that required persons who loitered or wandered the streets to provide "credible and reliable" identification and to account for their presence when requested to do so by the police.[3] Failure to do so could result in arrest. In holding that this statute was unconstitutionally vague, the Supreme Court stated:

> [the statute] contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a "credible and reliable" identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute...."

*Id.* at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909. The Court based its holding on the fact that the statute's vagueness presented the potential for arbitrarily suppressing first amendment liberties as well as infringing the right to freedom of movement. *Id.* at 358, 103 S.Ct. at 1859, 75 L.Ed.2d at 910.

We find that the decision in *Kolender* is inapposite to the present case. The underlying concern for specific and fundamental constitutional rights that was present in *Kolender* is not present in this case. No first amendment or freedom of movement claim is made by the defendant here. It is well established that where no fundamental or first amendment right is being implicated by a constitutional challenge to a statute on the basis of vagueness, a less stringent standard of review applies. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 82 S.Ct. 275, 7

L.Ed.2d 285 (1961). The traditional standard of review applicable to statutes not involving protected first amendment conduct was set forth in *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). In *Powell*, the Court stated that vagueness challenges to such statutes must be examined in light of the particular facts of the given case. *Id.* at 92, 96 S.Ct. at 319, 46 L.Ed.2d at 233. The Court noted that in analyzing such a challenge, the courts should attribute to the legislature the "commonsense meaning" of ambiguous terms or phrases and that "straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the 'void for vagueness' doctrine." *Id.* at 93, 96 S.Ct. at 320, 46 L.Ed.2d at 234. Furthermore, the fact that a statute could have been drafted with " '[c]learer and more precise language' ... does not mean that the statute ... is unconstitutionally vague." *Id.* at 94, 96 S.Ct. at 321, 46 L.Ed.2d at 235. Only where a statute proscribes no comprehensible course of conduct at all, is it unconstitutional as applied to any set of facts. *Id.* at 92, 96 S.Ct. at 319–20, 46 L.Ed.2d at 233–34. Furthermore, a facial challenge to a statute that does not threaten to inhibit the exercise of a constitutional right should fail as long as the statute gives persons of ordinary intelligence reasonable opportunity to know what is prohibited and provides explicit standards for those who apply it. *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193, 71 L.Ed.2d at 371.

Arizona has followed the *Powell* and *Flipside* approach to vagueness challenges. In *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983), the court noted:

> Where a statute gives fair notice of what is to be avoided or punished, it should not be declared void for vagueness simply because it may be difficult for the public

---

3. The California statute in question read, in pertinent part:

> Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: ... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

to determine how far they can go before they are in actual violation.

*Id.* at 598, 680 P.2d at 129.

 This court has adopted the same judicial philosophy toward void for vagueness challenges. In *State v. Jacobs*, 119 Ariz. 30, 579 P.2d 68 (App.1978), we noted that the constitutional prohibition against excessive vagueness:

> does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." ... All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Id.* at 32–33, 579 P.2d at 70–71 (citations omitted). We find that the lower standard of review used in *Powell, Fuenning,* and *Jacobs* is applicable to this case rather than the more restrictive test used in *Kolender.*

The defendant argues that even under this lesser standard of review, the case of *State v. Young*, 62 Ohio St.2d 370, 406 N.E.2d 499, *cert. denied*, 499 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980), supports his contention that A.R.S. § 13–2308 is impermissibly vague. In *Young*, the Ohio Supreme Court considered an "organized crime" statute similar to A.R.S. § 13–2308 and found it unconstitutionally vague because it failed to give a person of ordinary intelligence fair notice that his conduct was forbidden. Defendant concludes that since A.R.S. § 13–2308 similarly subjects a person to punishment for activities which are not clearly or ascertainably proscribed as illegal, the trial court was correct in finding the statute unconstitutionally vague.

The statute challenged in *Young* provided that "[n]o person, with purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following [enumerated activities]." The Ohio court noted that the statute applied to anyone who facilitated *any* of the criminal syndicate's activities and, therefore, did not limit the prohibited acts to those undertaken solely to facilitate *illegal*

activities. The court observed that a criminal syndicate may engage in many legal activities. For example, the court noted that some activities, such as reporting income for federal tax purposes, would be required by law, but that in assisting the criminal syndicate in accomplishing this legal activity, an innocent person would be facilitating an activity of the criminal syndicate. *Young*, 406 N.E.2d at 503. Yet, by its own language, the Ohio statute applied to a person who facilitated *any* of the criminal syndicate's activities, whether legal or illegal. The court concluded that without the insertion of the word "illegal" into the statute's scienter requirement, the statute presented obvious difficulties. *Id.* Because the statute failed to specify with "reasonable clarity" what kinds of activity it prohibited, the court held that the statute was unconstitutionally vague. *Id.*

 Unlike the Ohio statute struck down in *Young*, however, A.R.S. § 13–2308 limits its scope to those individuals who intentionally or knowingly engage in activities designed or intended to further the *illegal* objectives of a criminal syndicate. A.R.S. § 13–2308 has been construed to be similar to the crime of conspiracy, and the phrases "on a continuing basis" and "criminal syndicate" have been interpreted to suggest a need to prove more than one criminal act and to charge and join multiple offenses in prosecution under the statute. Gerber, *Criminal Law of Arizona*, 325–26 (1978). Because this statute requires anyone charged with leading organized crime to do so knowing or intending that his conduct will further the criminal objectives of a criminal syndicate, it reaches only the conduct of those who exhibit the requisite mental intent to promote or further a criminal syndicate's objectives, i.e., the violation of any felony statute of this state on a continuing basis. Unless the actor intends or knows that certain specified conduct will assist a combination of persons in committing a felony, he is not guilty of leading organized crime. *See* A.R.S. § 13–2308(A)(1–4).

A commonsense reading of the statute demonstrates a legislative intent to punish

only those individuals who cooperate with a combination of individuals or businesses with the intent to assist them in violating Arizona's felony statutes on a continuing basis. The statute does not reach any constitutionally protected conduct and its proscriptions are easily understood by persons of ordinary intelligence. We find, therefore, that the decision in *Young* is inapplicable to the instant case and gives no support to defendant's claim that A.R.S. § 13–2308 is unconstitutionally vague.

We draw support for this conclusion from the case of *Lucario v. State*, 677 S.W.2d 693 (Tex.App.1984). In *Lucario*, the court upheld Texas' organized crime statute against a challenge that it was unconstitutionally vague. The court found that the statute attached liability when a person committed an offense if, "with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commit[ted] or conspire[d] to commit *one* or *more* of the following [criminal acts]." *Lucario*, 677 S.W.2d at 697. The statute enumerated seven specific categories of offenses which were unlawful activities in and of themselves. The statute also defined a "combination" to require that a group of five or more persons "collaborate in carrying on" criminal activity.

The defendant in *Lucario* argued that the statute was vague because it did not define the term "collaborate in carrying on" criminal activities. *Id.* at 699. Like the defendant here, he argued that the statute did not specify a minimum number of offenses which must be committed within a definite time period in order to be considered "carrying on" criminal activity. *Id.*

In upholding the statute's constitutionality, the court noted that where words in a criminal statute are not defined, the words employed are given their plain and ordinary meaning. *Id.* It held that because the statute reached only those persons who intentionally engaged in criminal acts, the statute did not prohibit constitutionally protected conduct and was not unconstitutionally vague. Unless the defendant commit-

ted or conspired to commit the enumerated acts *with the intent* to establish, maintain, or participate in a combination or in the profits of a combination, he could not be prosecuted for a felony. *Id.* at 700. Because the court in *Lucario* interpreted the Texas statute to apply only to *illegal* conduct, it found, as we do, that the holding in *Young* was inapplicable to the statute in question.

■ We also disagree with defendant's contention that A.R.S. § 13–2308 is impermissibly vague because the term "continuing basis," which is used in § 13–2301(C)(2) to define "criminal syndicate" for purposes of § 13–2308, is left undefined. We base our holding on two considerations. First, the fact that the term "continuing basis" is not defined is of no help to this particular defendant because he is charged with having participated in crimes which occurred over a lengthy period of time and which involved numerous alleged violations of the state's felony statutes. Thus, regardless of what definition is given to the term "continuing basis," defendant's alleged conduct falls within its scope. Second, we find a close similarity between A.R.S. § 13–2308 and 21 U.S.C. § 848, the continuing criminal enterprise section of the Comprehensive Drug Abuse, Prevention and Control Act. That section proscribes conduct undertaken in concert with five or more other persons during a "continuing series of violations." The statute does not specify the number of related, successive events necessary to constitute a "series." However, Webster's Third New International Dictionary (1966) defines "series" as "a group of usually three or more things or events standing or succeeding in order and having a like relationship to each other." The courts have relied on that definition in holding that the series element is satisfied by proof of three or more related violations. *See e.g.*, *United States v. Valenzuela*, 596 F.2d 1361 (9th Circuit), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979); *United States v. Bergdoll*, 412 F.Supp. 1308 (D.Del.1976). Furthermore, Black's Law Dictionary (5th ed. 1979) defines "continuing" to mean "[e]nduring; not terminated

by a single act or fact; subsisting for a definite period or intended to cover or apply to successive similar obligations or occurrences." *See also United States v. Collier*, 358 F.Supp. 1351 (E.D.Mich.1973). Because we believe that "continuing basis," as used in A.R.S. § 13–2301(C)(2), was intended to apply to a series of violations over a definite period of time, we find those federal cases persuasive in construing A.R.S. § 13–2308. Defendant's alleged conduct certainly falls within the ambit of that interpretation.

Finally, defendant argues that the mental elements of "intentional" and "knowing" conduct required by A.R.S. § 13–2308 cannot cure the statute's vagueness. He argues that although he was given notice that he must "intend" to organize, manage, direct, supervise, or finance a "criminal syndicate" or "knowingly" incite or induce others to engage in violence or intimidation to promote or further the "criminal objectives" of a "criminal syndicate," neither the term "criminal syndicate" nor "criminal objectives" is adequately defined. He contends, therefore, that it was impossible for him to receive notice or warning that his conduct might violate the law irrespective of whether his conduct was intentional or knowing.

■ We disagree with this contention. As noted above, we do not find that the meaning of the term "criminal syndicate" is vague or beyond the comprehension of the average person. Moreover, as to the meaning of "criminal objectives," the criminal objectives referred to in A.R.S. § 13–2308 are circumscribed by the definition of the term "criminal syndicate," which indicates that it is *any* combination of persons or enterprises which engages in, or has the purpose of engaging, on a continuing basis, in conduct which violates any felony statute in this state. The criminal objectives of the criminal syndicate would be, by definition, the violation of any felony statute. We believe, therefore, that under the scienter requirements of A.R.S. § 13–2308, a person can be guilty of leading organized crime only if he intentionally or knowingly engages in conduct with the intent to promote or further the illegal and felonious objectives of a criminal syndicate. We find no constitutional infirmity here.

It has long been recognized that a scienter element may mitigate a law's vagueness both with respect to the adequacy of notice to a defendant that his conduct is prohibited and to the adequacy of standards to prevent arbitrary and discriminatory enforcement by law enforcement officials. *See Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *see also*, Note, *Void–For–Vagueness Doctrine in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.: Revision or Misapplication?* 34 Hastings L. J. 1273, 1285–86 (1983). We believe the scienter element of A.R.S. § 13–2308 accomplishes both these tasks.

For the foregoing reasons, we find A.R.S. § 13–2308 to be constitutionally valid and therefore remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

MEYERSON and MOELLER, JJ., concur.

NOTE: The Honorable JAMES MOELLER, Maricopa County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.