PER CURIAM.
We have on appeal L.B. v. State, 681 So.2d 1179 (Fla. 2d DCA 1996), which declared section 790.001(13), Florida Statutes (1995), unconstitutionally vague. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we reverse.
FACTS
Petitioner, a minor, was charged with and convicted of possessing a weapon on school property in violation of section 790.115(2), Florida Statutes (1995).[1] Authorities at petitioner’s middle school discovered her in possession of a folding knife with a 3 3/4-inch blade and an approximate overall length of 8 1/2 inches. At trial, the court considered whether petitioner’s knife fit within the “common pocketknife” exception to the definition of “weapon” contained in section 790.001(13), Florida Statutes (1995). Section 790.001(13) provides:
“Weapon” means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
The trial court found that petitioner’s knife was too large to be considered a “common pocketknife,” and was therefore a “weapon” within the meaning of sections 790.001(13) and 790.115(2).[2] Accordingly, the trial court found appellant guilty of the violation.
On appeal, the Second District vacated the trial court’s order and remanded the ease for a new trial. L.B., 681 So.2d at 1180. The district court held that section 790.001(13) is unconstitutionally vague insofar as it ex-eludes “common pocketknives” from the definition of “weapon.” Id. The district court noted that any penal statute must “define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Id. (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). The district court then concluded that the statute “imper-missibly leaves the question of whether a specific pocketknife is or is not a weapon to the ‘whim of a jury,’ ” and that “the statute is not reasonably certain and fails to provide guidance to citizens who wish to follow a lawful course of conduct.” Id.
After determining that the term “common pocketknife” was void for vagueness, the district court did not invalidate the entire statute. Rather, it held that the term “common pocketknife” would be excised from section 790.001(13) in accordance with the principle that a court is “obliged to preserve as much of the statute as is permissibly consistent with both the legislative intent and constitutional strictures.” Id. at 1181. Thus, the district court determined that section 790.001(13) should be interpreted to read:
“Weapon” means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm.
Id. at 1181.
ANALYSIS
It is an established principle of our constitutional jurisprudence that a statute is considered vague if it “does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct.” See State v. Muller, 693 So.2d 976, 977 (Fla.1997). While we agree that section 790.001(13) is not “a paradigm of legislative drafting,” State v. Manfredonia, 649 So.2d 1388, 1390 (Fla.1995), we believe that the term “common *372 pocketknife,” as contained in the statute, does provide persons of ordinary intelligence with fair notice as to what constitutes forbidden conduct.
The legislature’s failure to define the term “common pocketknife” in section 790.001(13) does not render that term unconstitutionally vague. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980) (where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense). Moreover, a court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term. See Gardner v. Johnson, 451 So.2d 477, 478 (Fla.1984).
To that end, we note that Webster’s defines “common” as: “known to the community; occurring or appearing frequently esp. in the ordinary course of events; of, relating to, or typical of the many rather than the few.” Webster’s Third New International Dictionary 458 (1986). Webster’s defines “pocketknife” as “a knife with a blade folding into the handle to fit it for being carried in the pocket.” Id. at 1747. From these definitions, we can infer that the legislature’s intended definition of “common pocketknife” was: “A type of knife occurring frequently in the community which has a blade that folds into the handle and that can be carried in one’s pocket.” We believe that in the vast majority of eases, it will be evident to citizens and fact-finders whether one’s pocketknife is a “common” pocketknife under any intended definition of that term. We need not be concerned with odd scenarios construing smaller but more expensive knives as “uncommon.” As the United States Supreme Court has observed, “[s]uch straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the ‘void for vagueness’ doctrine, and we will not indulge in it.” United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975).
An analogous situation are those penal statutes which measure conduct by a “reasonable person” standard. See, e.g., Manfredonia, 649 So.2d at 1391 (rejecting a vagueness challenge to a statute imposing a duty upon any adult in control of an open house party to “take reasonable steps” to prevent the possession or consumption of alcohol or drugs by a minor at that party). Like statutes which impose a “reasonable person” standard upon the citizenry, the Legislature’s use of the modifier “common” in section 790.001(13), while perhaps not a “model of clarity,”[3] see id., does appeal to the norms of the community, which is precisely the gauge by which vagueness is to be judged. See Muller, 693 So.2d at 977 (requiring statutes “give people of ordinary intelligence fair notice of what constitutes forbidden conduct”).
We may assume, for the sake of argument, that in some peripheral cases it may not be clear whether a particular pocketknife is a “common” pocketknife. However, that reason alone is insufficient to strike a statute as unconstitutionally vague, for we have explained:
[L]ack of precision is not itself offensive to the requirements of due process. “... [T]he Constitution does not require impossible standards”; all that is required is that the language “conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices_” ... “That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.... ”
Manfredonia, 649 So.2d at 1390 (quoting Roth v. United States, 354 U.S. 476, 491-92, 77 S.Ct. 1304, 1312-13, 1 L.Ed.2d 1498 (1957)). Moreover, even if judges and juries were prone to reach inconsistent conclusions as to which knives are “common pocketknives” under section 790.001(13), the statute still would not be rendered unconstitutional. *373 The United States Supreme Court has stated:
It is argued that because juries may reach different conclusions as to the same material, the statutes must be held to be insufficiently precise to satisfy due process requirements. But, it is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.
Roth, 354 U.S. at 492 n. 30, 77 S.Ct. at 1313 n. 30.
Since in the vast majority of cases it will be evident whether one’s particular knife is a “common pocketknife,” and because “all doubts as to the validity of a statute are to be resolved in favor of constitutionality where reasonably possible,” Department of Law Enforcement v. Real Property, 588 So.2d 957, 961 (Fla.1991), we hold that section 790.001(13) is not void for vagueness.
As to the knife at issue here, we hold that petitioner’s knife plainly falls within the statutory exception to the definition of “weapon” found in section 790.001(13). In 1951, the Attorney General of Florida opined that a pocketknife with a blade of four inches in length or less was a “common pocketknife.” Op. Att’y Gen. Fla. 051-358 (1951). The knife appellant carried, which had a 3 3/4-ineh blade, clearly fell within this range.[4] Accordingly, appellant’s conviction is vacated as we find that the knife in question was a “common pocketknife” under any intended definition of that term.
The judgment of the district court of appeal is reversed. We remand this case to the Second District for proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., concur.
GRIMES, J., concurs with an opinion in which WELLS, J., concurs.
ANSTEAD, J., concurs specially with an opinion in which KOGAN, C.J., concurs.

. The statute reads: "A person shall not possess any firearm, electric weapon or device, destructive device, or other weapon on the property of any school, school bus, or school bus stop....” § 790.115(2), Fla. Stat. (1995).

. The Legislature has not defined the term "common pocketknife.”

. "The fact that [the Legislature] might, without difficulty, have chosen ‘clearer and more precise language’ equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague.” United States v. Powell, 423 U.S. 87, 87, 96 S.Ct. 316, 317, 46 L.Ed.2d 228 (1975).

. We note that neither the Attorney General nor this Court maintains that four inches is a bright line cutoff for determining whether a particular knife is a "common pocketknife.’' We merely hold that appellant's knife fits within the exception to the definition of weapon found in section 790.001(13). We decline to consider whether a pocketknife with a blade-length in excess of four inches can be considered a “common pocketknife."