701 So.2d 626 (1997)
J.D.L.R., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-0592.
District Court of Appeal of Florida, Third District.
November 5, 1997.
Bennett H. Brummer, Public Defender, and Julie M. Levitt, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Douglas Gurnic, Assistant Attorney General, for appellee.
Before NESBITT, LEVY and GERSTEN, JJ.
NESBITT, Judge.
We affirm the trial court's denial of J.D.L.R.'s motion to dismiss and its adjudication of J.D.L.R., a juvenile, as delinquent. Contrary to the argument J.D.L.R. advances on appeal, the Supreme Court in L.B. v. State, 700 So.2d 370 (Fla.1997), held that the term "common pocketknife" in section 790.001(13), Florida Statutes (1995), is not unconstitutionally vague. Furthermore, the trial judge's analysis regarding the particular knife at issue herein which he considered the specific characteristics of the knife as well as its sizecomports with the Supreme Court's reasoning in L.B. See L.B., 700 So.2d at 372. Under this analysis, we agree that J.D.L.R.'s knife was not a "common pocketknife".
Although the facts in the instant case were similar to those in L.B., the knife in question was not. J.D.L.R., like L.B., was arrested for carrying a weapona knifeon school grounds in violation of section 790.115(2), Florida Statutes (1995), which prohibits a person from possessing a "weapon" on school property. J.D.L.R. moved to dismiss the charge on the grounds that the knife in question was a "common pocketknife", which is excepted from the definition of "weapon" in section 790.001(13)[1]. Denying the motion, the trial judge observed that the knife in question had several "weapon-like" characteristics that arguably took it out of the "common pocketknife" category, and permitted the State to argue that the knife was, indeed, a "weapon"[2]. The judge described *627 J.D.L.R.'s knife as a folding knife with a pointed 3 1/2 inch blade, notched combat-style grip and large metal hilt guard (to prevent the user's fingers from sliding onto the blade). In contrast, the knife in L.B., which the Supreme Court found was a "common pocketknife", was merely described as a folding "buck knife" with a 3 3/4 inch blade and an overall length of 8 1/2 inches. L.B., 700 So.2d at 372.
We agree with the trial judge that J.D.L.R.'s knife does not fall within the Supreme Court's definition of "common pocketknife""a type of knife occurring frequently in the community which has a blade that folds into the handle and can be carried in one's pocket." Id. It is, indeed, a "pocketknife", but it is not a "common" knife. As the trial judge pointed out, its distinctive features are not those characteristic of the typical, ordinary, frequently-occurring pocketknife, but rather are characteristic of a weapon.
Affirmed.
NOTES
[1] Section 790.001(13), Florida Statutes (1995) provides:

"`Weapon' means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife."
[2] The trial judge stated, in denying J.D.L.R.'s motion to dismiss: "If that [J.D.L.R.'s knife] was a pocketknife just shown to me, I would grant the motion. It's not a pocketknife. It's [a] knife that the State could easily argue is not designed to be a tool of any sort, but is designed to be a weapon ... that's why I'm denying the sworn motion to dismiss...." Later, the judge observed: "[F]or purposes of the sworn motion to dismiss, in my opinion, there's enough for the State to argue, based on the description of the knife and my observations, it having more weapon-like characteristics, like in the handle, and the nature of the blade, compared to your average knife. And that's the basis of my denial of the sworn motion to dismiss."