932 So.2d 1125 (2006)
Tracie Turner JACKSON and Ulysses B. Jackson, etc., Appellant,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL, etc., et al, Appellee.
No. 5D05-571.
District Court of Appeal of Florida, Fifth District.
June 16, 2006.
Rehearing Denied June 16, 2006.
*1127 Christian D. Searcy, Darryl L. Lewis and Rosalyn Sia Baker-Barnes of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, and Philip M. Burlington, of Burlington & Rockenbach, P.A., West Palm Beach, for Appellants.
Wilbur E. Brewton, Kelly B. Plante and Tana D. Storey of Roetzel & Andress, L.P.A., Tallahassee, for Appellee NICA.
Henry W. Jewett, II, Jennings L. Hurt, III, Christian P. Trowbridge of Rissman, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellees Alejandro J. Pena, M.D., Marc W. Bischof, M.D., and Physician Associates of Florida, Inc.

ON MOTION FOR REHEARING
PALMER, J.
Tracie and Ulysses Jackson filed a motion for rehearing of this court's opinion dated March 24, 2006. We grant the motion, withdraw our prior opinion, and issue the following opinion in its stead.
Tracie and Ulysses Jackson appeal the final order entered by the administrative law judge (ALJ) on the issues of compensability and notice under Florida's Birth-Related Neurological Injury Compensation Act (NICA).[1] Finding no error, we affirm.
NICA provides an exclusive remedy in the form of compensation for certain statutorily defined birth-related neurological injuries on a no-fault basis. Of particular importance to the instant appeal, NICA requires that physicians give pre-delivery notice to their obstetrical patients of their participation in the NICA plan as a condition precedent to said physicians invoking NICA as the patient's exclusive remedy. The purpose of the pre-delivery notice requirement is to enable the patient to make an informed choice between hiring an obstetrician who participates in the NICA plan and hiring one who does not. Importantly, the failure of a physician to give the statutory pre-delivery notice to a patient operates to preclude application of NICA's exclusive remedy provision, thereby entitling the patient to proceed with a medical malpractice lawsuit against the physician for damages arising out of the birth of a child with birth-related neurological injuries. Section 766.316 of the Florida Statutes outlines the notice requirement as follows:
766.316. Notice to obstetrical patients of participation in the plan
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
§ 766.316, Fla. Stat. (2004).
Here, Tracie and Ulysses Jackson, as parents of Jacqueline Jackson, filed a petition *1128 with the Division of Administrative Hearings against the Florida Birth-Related Neurological Injury Compensation Association (the Association) seeking a determination of their entitlement to receive NICA benefits. The petition explained that Jacqueline suffered brain damage as a result of a birth-related neurological injury sustained at the time of her birth. The petition asserted that Jacqueline's injuries were compensable under NICA, but the attending physicians and the medical group which employed them, Physician Associates of Florida, Inc. (hereinafter collectively referred to as PAF), were not entitled to NICA immunity because they had failed to give Mrs. Jackson proper pre-delivery notice of their participation in the NICA plan.
The parties stipulated that Jacqueline's claim was compensable under NICA and that the only issue to be resolved was whether adequate pre-delivery notice had been given to Mrs. Jackson by PAF concerning its participation in NICA.
At the hearing, Nurse Liz Posey, an employee of PAF, testified that she informs prenatal patients about the NICA plan by giving them a packet which includes a "Peace of Mind for an Unexpected Problem" pamphlet. Said pamphlet is distributed by NICA to physicians for the purpose of patient education and it outlines the nature of NICA coverage and limitations. She also testified that she verbally advises all prenatal patients that all of the physicians in PAF participate in the NICA plan.
Mrs. Jackson was also given a "Notice to Obstetric Patient" form, which was signed by her. The purpose of the form was to verify the fact that Mrs. Jackson had received the "Peace of Mind" pamphlet. The form signed by Mrs. Jackson had a blank space where the individual names of PAF's OB-GYN physicians were supposed to have been filled in.
Upon review of the evidence, the ALJ ruled that, "based upon the competent and substantial evidence, this court finds that Ms. Jackson was given sufficient notice during ... [her] initial office visit that all of the obstetricians employed by PAF participated in NICA." This appeal timely followed.
The Jacksons argue that the ALJ erred, as a matter of law, in concluding that PAF satisfied its burden of proving that proper pre-delivery statutory notice had been provided to Mrs. Jackson. We disagree.
As noted above, section 766.316 of the Florida Statutes outlines NICA's notice requirement. Under the statute, physicians are required to provide their patients with notice on forms furnished by NICA which clearly explain the patient's rights and limitations under the NICA plan. The statute further provides that, if the physician has the patient sign a form acknowledging receipt of the NICA form, then a rebuttable presumption arises indicating that the notice requirements of the statute have been met.
The ALJ properly recognized that NICA developed a pamphlet titled "Peace of Mind for an Unexpected Problem." The pamphlet contains a clear and concise explanation of a patient's rights and limitations under the NICA plan, as is required by the terms of the statute.
The ALJ then made the finding that the evidence was undisputed that Mrs. Jackson received the "Peace of Mind" pamphlet during her initial prenatal visit to PAF as was required under the statute. The ALJ also noted that the evidence was undisputed that Mrs. Jackson received PAF's "Notice to Obstetrical Patient" form and that she signed it. However, the ALJ concluded *1129 that, since the form had a blank space where the names of the physicians should have been filled in, the notice form was inadequate to give rise to the statutory rebuttable presumption that PAF provided proper notice as outlined in the statute:
There is likewise no dispute that, given the blank space, the notice form was inadequate to provide notice that Dr. Bischof, Dr. Pena, or any obstetrician associated with PAF was a participating physician in the Plan.
The ALJ properly recognized that the factual issue which was disputed was whether Mrs. Jackson was told during her initial visit that all of PAF's physicians were participants in the NICA plan. In reviewing the evidence in its effort to resolve the dispute, the ALJ concluded:
Here, giving due consideration to the proof, it must be resolved that the more persuasive proof supports the conclusion that, more likely than not, Nurse Posey, consistent with her routine, discussed the NICA program with Mrs. Jackson on her initial visit, and informed Mrs. Jackson that the physicians associated with PAF's obstetrical program were participating physicians in the Plan. In so concluding, it is noted that, but for the NICA program, Mrs. Jackson acknowledged Nurse Posey otherwise followed her routine; that it is unlikely, given such consistency, Nurse Posey would not have also discussed the NICA program; that Nurse Posey, as was her routine, co-signed each of the forms she discussed with Mrs. Jackson, including the Notice to Obstetric Patient; that Nurse Posey, as was her routine, documented her activity on the prenatal flow sheet; and that Mrs. Jackson evidenced little recall of the documents she signed or the discussions she had with Nurse Posey. Finally, Nurse Posey's testimony was logical, consistent, and credible, whereas Mrs. Jackson's testimony was often equivocal.
The Jacksons maintain that the ALJ erred in concluding that PAF proved that it had complied with the pre-delivery notice provisions of the statute, claiming that Nurse Posey's verbal notice did not comply with the terms of the statute. The Jacksons contend that the language of the statute mandates that physicians give their patients not only a copy of the "Peace of Mind" pamphlet but also written notice of the names of the physicians who are participants in the NICA plan. They claim that, since Mrs. Jackson did not receive written notice as to the names of the PAF physicians who were participating in the NICA plan, PAF failed to comply with its statutory notice obligation. We disagree.
The evidence was sufficient to demonstrate that Mrs. Jackson received proper written notice concerning the nature of the NICA plan as well as proper verbal notice that all of PAF's physicians were participants in the NICA plan. Contrary to the Jacksons' claim of error, there is no requirement that the names of the participating physicians be set forth in a written notice. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308 (Fla.1997)(holding that NICA patients must be given pre-delivery notice of physician's participation in NICA within a reasonable time period prior to delivery, when practical, but not mandating that that notice be in writing).
The Jacksons also argue that the ALJ's order should be reversed based on the fact that the ALJ relied solely upon Nurse Posey's testimony as to her routine for conducting initial prenatal visits to reach the factual conclusion that proper statutory notice had been verbally given to Mrs. Jackson. They maintain that, since there was no evidence of PAF's organizational routine but only of Posey's personal routine, Posey's testimony was not properly admissible. They further suggest that Florida law does not authorize the admissibility of Posey's testimony nor permit it, *1130 standing alone, to support the burden of proving a contested factual issue, but instead, only as corroboration to direct evidence. We again disagree.
Review of the record reveals that no objection was raised during the course of Posey's testimony concerning the admissibility or sufficiency of such evidence. As such, this claim of error was not preserved for appellate review. See Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283 (Fla. 1st DCA 1993)(holding that objection to testimony was not preserved for appellate review where appellant failed to object contemporaneously). However, even if the objection had been properly preserved, we find the evidence now objected to, was admissible. See generally § 120.569(2)(g), Fla. Stat. (2005)(stating that all evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs shall be admissible in administrative proceedings, whether or not such evidence would be admissible in a trial in the courts of Florida).
AFFIRMED.
PLEUS, C.J., and SAWAYA, J., concur.
NOTES
[1] Section 766.301 through section 766.316 of the Florida Statutes (2004) sets forth the provisions of Florida's Birth-Related Neurological Injury Compensation Act.