973 So.2d 523 (2007)
Maribenny DIANDERAS and Arturo Dianderas, etc., Appellants/Cross-Appellees,
v.
FLORIDA BIRTH RELATED NEUROLOGICAL, etc., et al, Appellees/Cross-Appellants.
No. 5D06-1899.
District Court of Appeal of Florida, Fifth District.
December 21, 2007.
Rehearing Denied February 5, 2008.
*524 Scott R. McMillen, of McMillen Law Firm, P.A., Orlando, for Appellants/Cross-Appellees.
Wilbur E. Brewton, General Counsel, and Kelly B. Plante, Brewton Plante, P.A., Tallahassee, for Appellee-Cross-Appellant, NICA.
Harvey L. Jay, III and Travase L. Erickson, of Saalfield, Shad, Jay & Stokes, P.A., Jacksonville, and John W. Bocchino of Bobo, Cioto Bocchino, Newman & Corsini, P.A., Orlando, for Appellees-Cross-Appellants, Adventist Health Systems/Sunbelt, Inc., Loch Haven OB/GYN Group and Natasha M. Knight, M.D.
ORFINGER, J.
Maribenny Dianderas and Arturo Dianderas, on behalf of and as parents and natural guardians of Isabelle Dianderas, a minor; appeal a final administrative order entered on their petition for benefits under the Florida Birth-Related Neurological Injury Compensation Plan ("NICA"), created by sections 766.301-.316, Florida Statutes (2002). In the final order, the administrative law judge ("ALP) determined that, Isabelle suffered a "birth-related neurological injury" within the meaning of section 766.302(2); that the language of NICA's brochure satisfied the requirements of section 766.316; and that Mrs. Dianderas's physician, Dr. Natasha M. Knight, and her medical group, Loch Haven OB/GYN Group, P.A. (collectively "Dr. Knight"), had complied with the notice provisions of NICA, though the hospital, Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital, had not. On appeal, the Dianderases dispute the ALJ's determination that the brochure complied with the statutory notice provisions.[1] On cross-appeal, Florida Hospital disputes the ALJ's finding that it failed to satisfy the notice requirements of section 766.316. We affirm the order as it relates to Florida Hospital without comment. We write only to address the legal sufficiency of the NICA brochure given to Mrs. Dianderas by Dr. Knight prior to Isabelle's birth.
NICA was enacted to provide exclusive no-fault compensation for birth-related neurological injuries to infants. See §§ 766.301-.316, Fla. Stat. (2002); Fla. Birth-Related Neurological Injury Comp. Ass'n v. McKaughan, 668 So.2d 974, 978 (Fla.1996). Of significance to this appeal, NICA requires that participating hospitals and physicians give pre-delivery notice to obstetrical patients of their participation in NICA. See Galen of Fla., Inc. v. Braniff 696 So.2d 308, 309 (Fla.1997). The purpose *525 of the pre-delivery notice is to give an obstetrical patient the opportunity to make an informed choice between using a health care provider who participates in NICA and one who does not. If a non-participating health care provider is utilized, traditional civil tort remedies are preserved. See id. at 309-10 (citing Turner v. Hubrich, 656 So.2d 970, 971 (Fla. 5th DCA 1995)).
Dr. Knight, a NICA participant, provided Mrs. Dianderas a copy of the NICA brochure, entitled "Peace of Mind for an Unexpected Problem" in a timely manner. However, the Dianderases contend that the NICA "Peace of Mind" brochure furnished to Mrs. Dianderas does not contain a "clear and concise explanation of the rights and limitations under NICA" as required by section 766.316, Florida Statutes (2002). Specifically, they argue that the brochure fails to inform patients that what they may recover under NICA is potentially different, and may be substantially less than what they might recover in a medical malpractice case, and that there are some elements of damages available in a medical malpractice case that are unavailable if the patient elects to receive services from a NICA provider. Consequently, they conclude that the notice given to Mrs. Dianderas failed to comply with the statutory mandate of a "clear and concise" explanation of the rights and limitations under NICA. We disagree and affirm.
In pertinent part, the NICA brochure provided to Mrs. Dianderas, states:
The birth of a baby is an exciting and happy time. You have every reason to expect that the birth will be normal and that both mother and child will go home healthy and happy.
Unfortunately, despite the skill and dedication of doctors and hospitals, complications during birth sometimes occur. Perhaps the worst complication is one which results in damage to the newborn's nervous systeman injury may be catastrophic, physically, financially and emotionally.
In an effort to deal with this serious problem, the Florida Legislature, in 1988, passed a law which created a Plan that offers an alternative to lengthy malpractice litigation processes brought about when a child suffers a qualifying neurological injury at birth. The law created the Florida Birth-Related Neurological Injury Compensation Association (NICA).
EXCLUSIVE REMEDY
The law provides that awards under the Plan are exclusive. This means that if an injury is covered by the Plan, the child and its family are not entitled to compensation through malpractice lawsuits.
CRITERIA AND COVERAGE
Birth-related neurological injuries have been defined as an injury to the spinal cord or brain of a live-born infant weighing at least 2500 grams at birth. In the case of multiple gestation, the live birth weight is 2000 grams for each infant. The injury must have been caused by oxygen-deprivation or mechanical injury, which occurred in the course of labor, delivery or resuscitation in the immediate post delivery period in a hospital. Only hospital births are covered.
The injury must have rendered the infant permanently and substantially mentally and physically impaired. The legislation does not apply to genetic or " congenital abnormalities. Only injuries to infants delivered by participating physicians, as defined in s. 766.302(7), Florida Statutes, are covered by the Plan.

*526 COMPENSATION
Compensation may be provided for the following:
[] Actual expenses for necessary and reasonable care, services, drugs, equipment, facilities and travel, excluding expenses that can be compensated by state or federal government or by private insurers.
[] In addition, an award, not to exceed $100,000 to the infant's parents or guardians.
[] Funeral expenses are authorized up to $1,500.
[] Reasonable expenses for filing the claim, including attorney's fees.
NICA is one of only two (2) such programs in the nation, and is devoted to managing a fund that provides compensation to parents whose child may suffer a qualifying birth-related neurological injury. The Plan takes the "No-Fault" approach for all parties involved. This means that no costly litigation is required and the parents of a child qualifying under the law who file a claim with the Division of Administrative Hearings may have all actual expenses for medical and hospital care paid by the Plan.
You are eligible for this protection if your doctor is a participating physician in the NICA Plan. If your doctor is a participating physician, that means that your doctor has purchased this benefit for you in the event that your child should suffer a birth-related neurological injury, which qualifies under the law. If your health care provider has provided you with a copy of this informational form, your health care provider is placing you on notice that one or more physician(s) at your health care provider participates in the NICA Plan.
Section 766.316 requires, in relevant part, that NICA "shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries . . . [and that] [s]uch notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan." (Emphasis added). The question presented in this appeal is whether the Legislature, by requiring that the NICA notice to obstetrical patients "include a clear and concise explanation of a patient's rights and limitations under the plan," requires NICA to formulate a brochure that includes an explanation of the civil remedies that an obstetrical patient would forego if she chooses a participating provider.
In construing a statute, legislative intent guides our inquiry. See Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997); Fluet v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 788 So.2d 1010, 1013 (Fla. 2d DCA 2001). Legislative intent is determined from the plain language of a statute. See Jones v. State, 813 So.2d 22, 24 (Fla.2002). This rule of construction requires a straightforward consideration of each relevant sentence of the statute. Blinn v. Fla. Dep't of Transp., 781 So.2d 1103, 1105 (Fla. 1st DCA 2000). If the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory construction as the statute should be given its plain and obvious meaning. M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000); Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992). This Court reviews the ALJ's interpretation of a statute de novo. Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006) ("The interpretation of a statute is a purely legal matter *527 and therefore subject to the de novo standard of review.").
Under the statute, it appears that the use of the word "and" in the phrase "rights and limitations" indicates the Legislature's intent to make all parts of the sentence applicable in the conjunctive. See, e.g., Fla. Birth-Related Neurological injury Comp. Assn, 686 So.2d 1349 (holding that word "and" in phrase "substantially mentally and physically impaired" under section 766.302(2), Florida Statutes, must be construed to require both mental and physical impairment, not mental "or" physical impairment). However, the terms "clear," "concise," and "explanation" are not defined by statute. When a term is undefined by statute, "[o]ne of the most fundamental tenets of statutory construction" requires that we give a statutory term "its plain and ordinary meaning." Green. v. State, 604 So.2d 471, 473 (Fla. 1992). When necessary, the plain and ordinary meaning "can be ascertained by reference to a dictionary." Seagrave v. State, 802 So.2d 281, 286 (Fla.2001); Green, 604 So.2d at 473; see also L.B. v. State, 700 So.2d 370, 372 (Fla.1997) (stating that "a court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term").
Applying the above principles to the NICA statute, we assume that the Legislature understood the plain and ordinary meaning of the statutory terms "clear," "concise" and "explanation" when it included these terms in the statute. Hankey v. Yarian, 755 So.2d 93, 96 (Fla.2000); see Aetna Cas. & Sur. Co., 609 So.2d at 1317; Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); Sheffield v. Davis, 562 So.2d 384 (Fla. 2d DCA 1990). The dictionary defines the term "clear" as "[f]ree from doubt or confusion; certain." The American Heritage College Dictionary 279 (2d ed. 1985); see also Black's Law Dictionary 250 (6th ed. 1990) ("Obvious; beyond reasonable doubt; [p]lain; evident, free from doubt or conjecture, unequivocal. . . ."). The term "concise" means "[e]xpressing much in few words; clear and succinct." The American Heritage College Dictionary 305 (2d ed. 1985). The term "explanation" is defined as "[t]he act or process of explaining," and further defines "explain" as "[t]o make plain or comprehensive or to define." The American Heritage College Dictionary 477 (2d ed. 1985). Applying the plain and ordinary meaning of the terms "clear," "concise," and "explanation," we conclude that the statute only requires that NICA discuss the provisions of NICA itself. The statute requires NICA to provide forms that "include a clear ['free from doubt or confusion] and concise ['expressing much in few words; clear and succinct'] explanation ['Rio make plain or comprehensive] of the patients' rights and limitations under the plan." § 766.316, Fla. Sta. (2006) (emphasis added). We believe the phrase "under the plan" refers to the rights and limitations of the NICA plan, not the tort system. NICA has two primary limitations: (1) it is an exclusive remedy, meaning that no medical malpractice lawsuit can be maintained; and (2) it restricts the amount and types of damages that can be recovered from the plan itself. These limitations are clearly and concisely explained in the brochure. The statute's terms do not obligate NICA to further explain a patient's potential civil remedies at common law or otherwise. Hence, we conclude the NICA "Peace of Mind" brochure satisfies the legislative mandate of providing a "clear and concise explanation of a patient's rights (`Criteria and Coverage') and limitations (`Exclusive Remedy') under the plan." See Jackson v. Florida Birth-Related Neurological, 932 So.2d 1125, 1128 *528 (Fla. 5th DCA 2006).[2] Consequently, we affirm the final order.[3]
AFFIRMED.
MONACO and LAWSON, JJ., concur.
NOTES
[1] At oral argument, counsel for the Dianderases withdrew their second issue concerning the All's exclusion of their expert witness. The Dianderases also do not challenge the constitutionality of NICA.
[2] Because the terms are not ambiguous, see Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452, 455 (Fla.1992) (explaining that "[a]mbiguity suggests that reasonable persons can find different meanings in the same language"), it is unnecessary for this Court to compare the NICA statute to other statutes, including Florida's "informed consent" law for obtaining proper consent for medical treatment, as the Dianderases suggest.
[3] Although we said in Jackson, 932 So.2d at 1128, that the NICA brochure "contains a clear and concise explanation of a patient's rights and limitations under the NICA plan, as is required by the terms of the statute," we agree with the Dianderases that the statement is dictum and not controlling. The issues in Jackson related to delivery of the brochure, not the adequacy of it, and whether all providers in a group practice must be individually named in the notice to receive the benefit of MICA protection.