Gross, J.
Appellant was found delinquent on. the charge of improper exhibition of a dangerous weapon, which was the basis of a violation of probation. We reverse the finding of delinquency because the state failed to prove that- appellant wielded a “weapon” within the meaning of section 790.001(13), Florida Statutes (2016).
The key state witness broke up an argument between appellant and his brother. She saw appellant holding a knife with the *1268 point down but could not describe it because “the handle was in [appellant’s] hand.” The witness saw only the point of the blade and did not know its length. Appellant went back into his house and got a second knife, which the witness was also unable to describe. Police officers who responded to the scene did not recover any knives. Appellant timely moved for a judgment of dismissal, focusing on the deficiency in the description of what appellant held in his hand when he confronted his brother.
The difficulty in this case arises from the wording of the statute. Improper exhibition of a dangerous weapon or firearm occurs when “any person having or carrying any dirk, sword, sword cane, firearm, electric weapon or device, or other weapon shall, in the presence of one or more persons, exhibit the same in a rude, careless, angry, or threatening manner, not in necessary self-defense.” § 790.10, Fla. Stat. (2016) (emphasis added). If the alleged weapon is not one specified in the statute then it must qualify as an “other weapon.” Section 790.001(13) defines “weapon” as “any dirk, knife, metallic knuckles, slung-shot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife.” (Emphasis added).
When a knife is the weapon involved in a section 790.10 charge, it is necessary for the state to establish that the knife is not a “common pocketknife,” which is specifically excluded from the definition of the crime by section 790.001(13).[1]
This was the approach taken by the first district in J.R. v. State, 967 So.2d 365 (Fla. 1st DCA 2007). The defendant was accused of holding a knife to his girlfriend’s throat and was charged with aggravated assault with a deadly weapon and improperly exhibiting a dangerous weapon. Id. at 366. At trial, the victim and another eyewitness receded from their earlier statements, testifying “they could not recall the knife’s appearance, characteristics, or dimensions.” Id. Although the aggravated assault charge was dropped, the defendant was convicted of improper exhibition of a dangerous weapon. Id.
The first district acknowledged that appellate courts are generally deferential to the finder of fact on the characterization of an item as a “dangerous weapon”. Id. However, since there was no evidence describing the “appearance, characteristics, or dimensions” of the defendant’s knife, the evidence failed “to remove the knife from any of the statutory exceptions listed in the definition of ‘weapon’ in section 790.001(13).” Id. at 367. Reversing the adjudication of delinquency, the court concluded “the State presented no evidence by which the trial judge could possibly have found the knife constituted a ‘dangerous weapon’ which appellant exhibited ‘in a rude, careless, angry, or threatening manner.’ ” Id.
Two other courts have taken a different approach as to whether a knife qualifies as a “weapon” under section 790.001(13), fo *1269 cusing on the fact that a pocketknife was not folded in the closed position. In Porter v. State, the defendant was found with an open pocketknife with a blade measuring 1 3/4 inches. 798 So.2d 855, 855 (Fla. 5th DCA 2001). The fifth district concluded that a pocketknife in the open position in the defendant’s pocket did not fall within the “common pocketknife” exception in section 790.001(13). Id. at 856. Relying on Porter, the third district has also held that “[a] pocketknife which is found in the open position ... does not fall within the common pocketknife exception.” J.R.P. v. State, 979 So.2d 1178, 1179 (Fla. 3d DCA 2008).
The better approach to the “common pocketknife” exception is that taken by the first district in J.R. v. State. The plain language of the statute draws no distinction between closed or open pocketknives. A “common pocketknife” is just as much a pocketknife when it is open as when it is closed; its characteristic of “commonality” is the same either way. Neither Porter nor J.R.P. provide a sound rationale for tinkering with the language of the statute to limit the exception to folded pocketknives.
Here, the state’s civilian witness saw the point of a knife, but was unable to further describe the knife’s appearance, characteristics, or dimensions. The state failed to produce sufficient evidence that the pocketknife exception did not apply. We therefore reverse the adjudication of delinquency and the finding of a violation of probation and remand for the entry of a judgment of dismissal.

Reversed and remanded.

Conner and Kuntz, JJ., concur.

. Section 790.001(13) was attacked as unconstitutionally vague for its failure to define the term "common pocketknife.” L.B. v. State, 700 So.2d 370 (Fla. 1997). The supreme court agreed that in some cases it may be difficult to determine if a particular pocketknife is "common,” but nevertheless, found the statute constitutional, noting "in the vast majority of cases, it will be evident whether one’s particular knife is a ‘common pocketknife.' ” Id. at 373. Relying on the Attorney General’s opinion that a pocketknife with a blade of 4 inches or less was a “common pocketknife,” the supreme court held a pocketknife with a 3 3/4 inch blade fell within the statutory exception to the definition of a weapon. Id. The conviction for possession of a weapon on school property was reversed. Id.